# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 1393 | **DATE** | 11/21/2001 |
| **CASE TITLE** | Spina vs. Forest Preserve Cook County et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    Memorandum Opinion and Order entered. Plaintiff's Motion for Sanctions is granted/denied in part; Plaintiff's Motion for Judgment as a Matter of Law is granted; Plaintiff's Motions in Limine are granted/denied in part; Plaintiff's Rule 37(c)(1) Motion is granted; Defendants' Motions in Limine are granted/denied in part; Defendant Nudell's Motion in Limine is granted/denied in part; and Defendant Nudell's Motion for Indemnification is granted. *AK*

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | **NOV 2 3 2001** | |
| | Notified counsel by telephone. | | date docketed | 124 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 11/21/2001 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| | FT /secy   courtroom deputy's initials | Date/time received in central Clerk's Office | FT   mailing deputy initials | |

CYNTHIA C. SPINA, )
)
     Plaintiff, )
) Case No. 98-C-1393
   v. )
)
FOREST PRESERVE OF COOK COUNTY, ) Magistrate Judge
STEVEN CASTANS, JOHN ZIELINSKI, ) Arlander Keys
JOHN TINETTI, CLARENCE CALABRESE, )
MICHAEL NUDELL, HOWARD JONES, and )
OTHER UNKNOWN EMPLOYEES OF )
FOREST PRESERVE OF COOK COUNTY )
)
     Defendants, )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Sanctions, Plaintiff's Motion for Judgment as a Matter of Law, Plaintiff's Motions in Limine, Plaintiff's Rule 37 Motion, Defendants' Motions in Limine, Defendant Nudell's Motion in Limine, and Defendant Nudell's Motion for Indemnification. For the reasons set forth below, Plaintiff's Motion for Sanctions is granted in part and denied in part, Plaintiff's Motion for Judgment as a Matter of Law is granted, Plaintiff's Motions in Limine are granted in part and denied in part, Plaintiff's Rule 37 Motion is granted; Defendants' Motions in Limine are granted in part and denied in part, Defendant Nudell's Motion in Limine is granted in part and denied in part, and Defendant Nudell's Motion for Indemnification is granted.

124

## BACKGROUND

Plaintiff, Cynthia Spina, has been employed as a police officer with the Forest Preserve District of Cook County Department of Law Enforcement since late 1993.[1] Since that time, Officer Spina claims that she was sexually harassed by several fellow officers; Officers Jones and Nudell in particular. Although Officer Spina repeatedly complained to her supervisor, Sergeant Calabrese, that Officers Jones and Nudell were responsible for making derogatory remarks about her, for inappropriate physical contact, for repeatedly placing pornographic materials in her mailbox, and for spreading sexual rumors about her, Sergeant Calabrese purportedly dismissed her complaints as no more than Officer Spina being "too sensitive." Particularly troubling to Officer Spina was Officer Nudell's role in spreading an alleged rumor that Officer Spina was having an affair with a fellow officer, Officer Flynn.

Frustrated by Sergeant Calabrese's response to her complaints, Officer Spina decided to bring her complaints to the attention of Sergeant Calabrese's supervisors as well. In early 1996, Officer Spina made certain that her complaints were reviewed by all supervisory levels within the Department, up to and including the Chief of Police. Nevertheless, Officer Spina

---

[1] The Court will use the term the "District" when referring to the Defendant and the "Department" when referring only to the District's Department of Law Enforcement.

2

remained dissatisfied with her superiors' response to her complaints.

Finally, in February of 1997, Officer Spina complained to the President of the Cook County Board about the alleged harassment. In addition, on March 27, 1997, Officer Spina filed charges of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") against the District. This time, Officer Spina's complaints received formal attention; Sergeant Robert Agnes conducted an internal police investigation into Officer Spina's charges of harassment. As a result of Sergeant Agnes' investigation, Sergeant Calabrese and Officers Jones and Nudell were suspended without pay. Officer Nudell was ultimately terminated.[2]

Officer Spina alleges that this was not the end of her troubles at work, however. Officer Spina asserts that, in retaliation for her complaints, her tires were slashed, other

---

[2] Officer Jones left his position with the District following his suspension. On January 27, 1998, a hearing was held before the Civil Service Commission of the Cook County Board (the "Commission") on the District's charge that Officer Nudell should be terminated, in large part, because of his inappropriate conduct toward Officer Spina. In response to the Commission's recommendation, the District terminated Officer Nudell on March 3, 1998. Officer Nudell appealed this determination to the Circuit Court of Cook County in Chicago, Illinois, which twice reversed the Commission's recommendation. *Nudell v. Forest Preserve District of Cook County,* Case No. 98 CH 05897 (March 5, 1999 and March 1, 2000). The District appealed the Circuit Court's determination, which held that Officer Nudell should be suspended, but not terminated. The case is currently pending before the Illinois Appellate Court.

officers have refused to back her up or cooperate with her, and various officers spread inappropriate rumors about her. Officer Spina's superiors allegedly exacted their vengeance by holding Officer Spina to a higher standard with regard to sick days, vacation requests, job and vehicle assignments, and even lunch-break rules.

Officer Spina received her Notice of Right to Sue from the EEOC on December 18, 1997, and filed suit shortly thereafter. During the course of discovery, Officer Spina filed numerous motions to compel and for sanctions, seeking access to documents that the District had refused to produce. Despite two court orders, the District failed to produce thousands of documents within its control. Officer Spina was repeatedly frustrated by the District's purported "compliance" with these motions and orders; the District would lead Officer Spina and the Court to believe that it had produced all relevant documents, only to admit later – in the face of documentary evidence or deposition testimony to the contrary – that the earlier productions were incomplete. Even after discovery had closed, and just weeks before trial, the District produced hundreds of highly relevant documents to Officer Spina and the solo-practitioner representing her.

## I. Plaintiff's Motion for Sanctions

In his Order of August 6, 2001, Judge Darrah discussed the background facts with regard to Officer Spina's first and second Motion for Sanctions. The Court will set forth those facts here:

> In June 1998, plaintiff filed her first Request to Produce, requesting, in part, material related to roll calls, sick leave, duty rosters, time sheets, warnings or actions taken against employees for sexual harassment or discrimination, and materials used in any investigation of plaintiff's complaints of sexual harassment. In October 1999, plaintiff filed her Third Request to produce. Also in October 1999, the court[3] ordered defendants to produce the Human Resource complaint files of all employees who complained of discrimination or retaliation for the past five years. Subsequently, plaintiff filed her fourth, fifth, and sixth requests to produce in January, April, and October 2000, respectively.
>
> Plaintiff also requested that defendants produce several female employees of the Forest Preserve for deposition. Plaintiff has also made both oral and written requests of defendants to provide any outstanding discovery.
>
> In her Fourth Request to Produce, plaintiff specifically requested roll sheets for Area 2 and plaintiff's duty assignment for specific dates in 1996. Plaintiff requested the documents because defendants' defense, in part, is that they had responded appropriately to her complaints by conducting repeated roll calls for the period of time in question, at which time the sexual harassment policy was discussed. The documents requested are required and must be retained for specified periods of time per state law. Through deposition testimony, plaintiff learned that some of the requested documents had been thrown in a dumpster prior to the time in which they should have been destroyed by state law.

_____

[3] It was this Court that had ordered the District to produce the Human Resource complaint files.

In November 2000, the Court set a discovery cut-off of August 15, 2001, and a trial date of September 4, 2001.

In March 2001, plaintiff filed a motion to compel outstanding discovery and a motion for sanctions for destruction of evidence. Plaintiff requested that the Court: 1) order defendants to produce all outstanding materials within 30 days, 2) order defendants to produce certain individuals for deposition, 3) enter default judgment against defendants on the claims of sexual harassment and retaliation, 4) bar defendants from introducing at trial any evidence that they responded appropriately to plaintiff's complaints of harassment and discrimination, 5) bar defendants from producing any evidence contradicting plaintiff's claim that she was subjected to differential and heightened scrutiny on her sick leave subsequent to her complaints of harassment and discrimination, 6) instruct the jury that the defendants destroyed or failed to produce documents within its possession and under its control, which records would have shown whether defendants made an appropriate response to plaintiff's complaints and whether they retaliated against plaintiff, that plaintiff is unable to produce these documents for that reason, and that the jury can infer from this destruction that the responsive documents would have supported plaintiff's case.

In April 2001, defendants responded to the motion to compel. Included in the response were approximately 2,000 pages of outstanding discovery. In May 2001, plaintiff filed a reply to defendants' response and a second motion for sanctions[4] for failure to produce material and late production."

*Spina v. Forest Preserve of Cook County, et al.*, No. 98 C 1393,

slip op. at 1- 3( (N. D. Ill. Aug. 6, 2001).

Judge Darrah determined that, even though the District had

withheld and destroyed documents, the court believed that the

---

[4] In her Second Motion for Sanctions, Officer Spina noted that Defendants had once again failed to produce the Human Resource file of Ms. Joanne Robinson - the exact file that this Court had ordered the District to produce almost two years earlier, on October 6, 1999. Officer Spina repeated the sanctions requested in her first Motion for Sanctions.

District had finally produced all remaining documents still existing and within its possession before the close of discovery. *Id.* at 6. Therefore, the court limited its sanction to permitting Officer Spina to re-depose several witnesses and ordering the District to pay all costs and fees associated with the depositions. *Id.*

After reviewing the documents that Defendants had recently produced, and based upon testimony solicited in the re-depositions, Officer Spina learned that Defendants were still withholding several documents, including the Human Resources file created by Ms. Robinson. In addition, Officer Spina discovered that additional documents had been destroyed. On August 28, 2001, Officer Spina filed yet another Motion for Trial Sanctions arising out of Defendants discovery abuses. Officer Spina asserted that Defendants had failed to produce documents, which both this Court and Judge Darrah ordered to be produced, by the close of discovery, August 15, 2001.

Defendants produced an additional 1,688 pages of documents to Officer Spina on August 30, 2001 - less than one week before the trial was scheduled to begin.[5] These materials included an internal investigatory docket and some related complaint files compiled by Ms. Robinson; documentation of sexual harassment

---

[5] The September 4, 2001 trial date was subsequently reset to November 13, 2001, then to December 3, 2001.

prevention training, attendance, scheduling, and related materials; and the requested time records from 1997 and the sick leave records from 1996 through 1998. These documents include highly relevant documents, including a complaint filed by a female recruit that arguably supports Officer Spina's claim about the climate toward women in the Department.

On October 19, 2001, Defendants delivered another 2,200 pages of documents to Officer Spina. These documents include the briefs of the District, Officer Jones, and Officer Nudell in the various proceedings involving their suspension/termination; and personnel files for several of the Individual Defendants and from female officers who made complaints of sexual harassment and/or discrimination.

These documents arguably lend support to Officer Spina's position. Of particular note, in the District's briefs in the personnel matters, the District took positions with regard to Officers Jones and Nudell that they now attempt to disclaim in this litigation, i.e. that Officers Jones and Nudell sexually harassed Officer Spina. The briefs also disclose the District's position that Chief Castans was a policymaker, a position they attempt to deny in this litigation. Similarly, the personnel files contain highly relevant information that would have greatly assisted Officer Spina in taking depositions.

Officer Spina correctly argues that she is severely prejudiced by Defendants' belated production of documents that she requested years ago. Had these documents been produced in a timely manner, they would have greatly assisted Officer Spina in formulating her theories of recovery, in conducting further discovery, and in taking depositions.

The Court is struck by the fact that, in response to Officer Spina's request for the harshest of sanctions, the District did not even attempt to offer the Court any explanation for its repeated discovery abuses. The Court is left to wonder, for example, why the District could not have produced, in a timely manner, the 1,688 pages of documents that it finally turned over on August 30, 2001 -- two weeks after the close of discovery. Or why the District waited until October 19th to deliver another 2,200 pages of documents to officer Spina. It is likely more than a coincidence that the District withheld many of these documents until they were identified by witnesses or other evidence. The Court can only conclude that there is no acceptable excuse for the District's decision to flaunt their recalcitrance to this Court.

Instead of trying to explain their egregious transgressions, the District instead suggests that the prejudice caused by its latest round of productions can be cured. Defendants suggest that any prejudice to Officer Spina can be overcome by permitting

Officer Spina to re-depose certain witnesses for a second or third time. But the Court's docket and Plaintiff's trial preparation do not revolve around Defendants' sporadic whims to withhold or produce evidence, regardless of court orders. It is far too late in the day to ask Plaintiff's counsel, a solo-practitioner, to prepare for and take depositions, interview previously undisclosed witnesses, review thousands of pages of withheld documents, and prepare for trial.

A court has broad discretion to sanction parties for discovery abuses. *United States v. Golden Elevator, Inc.,* 27, F.3d 301, 303 (7th Cir. 1994). The court's sanction should, however, be proportionate and tailored to the offending conduct. *Id.* Where less severe sanctions have proved unavailing, a court may enter a default judgment against a party that violates discovery orders willfully and in bad faith. *In re: Golant v. Levy,* 239 F.3d 931, 936, n.1 (7th Cir. 2001).

Instead of placing an unbearable burden on the shoulders of Plaintiff's counsel, as the District suggests, the Court believes that the District's conduct warrants lightening her load. Although the Court declines Plaintiff's invitation to strike Defendants' Answer – a sanction well within the Court's discretion, *Marrocco v. General Motors Corp.,* 966 F.2d 220, 224 (7th Cir. 1992) – the Court, instead, will not require Plaintiff to prove certain allegations that rely, at least in part, upon

evidence improperly withheld by the District, as described below. Specifically, the Court finds that the District is barred from denying that Officers Nudell and Jones sexually harassed Officer Spina, that all Defendants were acting under color of state law and within the scope of their employment, that Officer Spina's supervisors failed to properly respond to her complaints, that Officer Spina was subjected to the harassment and mistreatment because of her gender, and that Chief Castans was a policymaker for the District.

In addition, Defendants are barred from introducing any witnesses or documents not properly disclosed prior to the close of discovery, on August 15, 2001.[6] Conversely, Officer Spina may introduce into evidence any of the late produced documents without having to present the testimony of the document's author, where the document and its author were not properly disclosed to her prior to the close of discovery.

Finally, the Court finds that a "missing evidence" instruction is appropriate in this case. *Neihus v. Liberio*, 973 F.2d 526, 531 (7th Cir. 1992). Officer Spina is entitled to an instruction that the District failed to offer evidence that was within its power to produce, and that the jury can infer that the evidence was adverse to the District. *Id.* at 530. The evidence

---

[6] The Court finds that the District's submissions at 6:55 p.m. on August 15, 2001 were made after the close of discovery.

here strongly suggests that the District not only withheld, but actually destroyed evidence supportive of Officer Spina's case. As such, Officer Spina is entitled to the benefit of this instruction.

In response, the District may present evidence to the jury that it did not, in fact, have control of this evidence, or that, contrary to its own agents' testimony, documents were not destroyed. *Id.* at 531.

## II.  **Plaintiff's Motion for Judgment as a Matter of Law.**

Officer Spina asks that this Court rule, as a matter of law, that the Chief of Police of the Cook County Forest Preserve Department of Law is a policymaker for the District.  "The identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge before the case is submitted to the jury."  *Jett v. Dallas Independent School* Dist., 491 U.S. 701, 737 (1989)(citing *St. Louis v. Praprotnik*, 485 U.S. 112, 124, n.1 (1988)).  Even if the Court had not, as part of its sanctions ruling, ruled that Chief Castans was a policymaker, the Court finds that the Chief of Police is a policymaker as a matter of law.

The question of whether the Chief of Police is a policymaker is relevant to Officer Spina's § 1983 claim because a local governmental unit may not be held liable on a respondeat superior

12

basis under § 1983. *Monell v. Dept. of Social Serv.*, 436 U.S

658, 690 (1978). "Rather, 'it is when execution of a government

policy or custom, whether made by its lawmakers or by those whose

edicts or acts may be fairly said to represent official policy,

inflicts the injury that the government as an entity is

responsible under § 1983.'" *Baxter v. Vigo County School Corp.*,

26 F.3d 728, 734 (7th Cir. 1994) (quoting Monell, 436 U.S. at

694). A local government unit directly violates a plaintiff's

civil rights when: 1) the government's express policy caused the

constitutional deprivation; 2) its widespread custom or practice,

which is so permanent that it has the force of law, caused the

injury; or 3) the injury was inflicted by a government official

or employee with "final policymaking authority." *Looper*

*Maintenance Serv. Inc. v. Indianapolis*, 197 F.3d 908, 912 (7th

Cir. 1999). Officer Spina seeks to establish the District's

liability under the third test, by demonstrating that the

Department's Chief of Police had final policymaking authority

with respect to the administration of the Department's sexual

harassment policy.

Policymakers are those officials "'who speak with final

policymaking authority for the local governmental actor

concerning the action alleged to have caused the particular

constitutional or statutory violation at issue." *Duda v. Board of*

*Education of Franklin Park Public School Dist. No. 84*, 133 F.3d

13

1054, 1061 (7th Cir. 1998)(quoting *Jett*, 491 U.S. at 737).
Courts look to state law to determine whether an official has
final policymaking authority.  *Duda*, 133 F.3d at 1061.

In this case, neither party has directed the Court to
Illinois laws or regulations defining the scope of the Chief of
Police's duties.  However, Defendants have conceded facts that
establish that the Chief of Police is a policymaker with respect
to the administration of the Department of Law's sexual
harassment policy.  In answering the Amended Complaint,
Defendants admitted that the Chief of Police is responsible for
the "overall training, supervision, and conduct of the Forest
Preserve Department of Law Enforcement, for issuing orders
concerning the conduct of employees of the Department, for
enforcing the regulations of the Department, and for ensuring
that all employees of the Department obey the orders, policies,
and regulations of the Department."  Defs. Ans. To Pls. Am.
Cmplt. ¶ 7.

In the Final Pretrial Order, Defendants concede that the
Chief of Police is the chief administrative officer and general
manager of the Department.  The General Superintendent of the
Department has given the Chief of Police the authority to issue
all general orders, rules, regulations, special orders, personnel
orders and memoranda for the Department.  Indeed, at his
deposition, Chief Castans conceded that he promulgated General

14

Order A94-02, which required all personnel to abide by Executive Order 91-4, prohibiting the denial of equal treatment on the basis of sex or gender. The Chief also has the authority to issue memoranda prohibiting sexual harassment in the workplace.

The Chief has the power to investigate an officer's conduct or complaint, and to reprimand or suspend offending officers. The Chief can order in-house training, make certain job assignments, direct the record-keeping methods, and even set policies regarding whether married or dating officers can work together.

These facts demonstrate not only that the Chief of Police has policymaking authority, but that Chief Castans actually exercised this authority, by ordering an investigation into Officer Spina's charges, promulgating General Order A94-02, and issuing memoranda prohibiting sexual harassment in the workplace.

Although the District relies heavily upon this Court's prior ruling in *Hall v. Thornton Fractional Township High School Dist. No. 215*, No. 99 C 1433, 2000 WL 1644548 (N.D. Ill. Oct. 24, 2000) to contest Officer Spina's motion -- arguing that the Chief of Police, like the principals in *Hall,* does not have the authority to hire and fire and, therefore, is not a policymaker -- the District ignores a critical distinction between *Hall* and the instant case. In *Hall*, this Court found that the principals were not policymakers with respect *to* their decision not to hire Plaintiff because they did not have the authority to make hiring

15

and termination decisions. This inquiry was highly relevant because the *Hall* plaintiff had complained that she was not hired because of her race.

In this case, however, the Chief's ability to hire and fire employees has little bearing on the issue of whether he was a policymaker with respect to the administration of the Department's sexual harassment policy. It is the administration of the sexual harassment policy - or lack thereof- that allegedly caused Officer Spina's injury, not the exercise of authority to hire or fire. Because the evidence demonstrates that the Chief of Police has the authority to investigate and discipline accused harassers, and otherwise set policy with regard to the Department's stance on sexual harassment, the Chief of Police is a policymaker for purposes of this case.

### III. Plaintiff's Motions In Limine

#### A. Motion in Limine No. 1

Officer Spina's first Motion in Limine seeks, among other things,[7] to bar the Individual Defendants from introducing evidence as to their net worth. The Individual Defendants hope to present evidence of their limited net worth to the jury, in an attempt to limit a potential award of punitive damages.

---

[7] The remainder of Officer Spina's Motion concerns matters such as preventing defendants from referencing settlement, or prohibiting non-party witnesses from being in the courtroom prior to testifying. The Court will address these general housekeeping matters before trial.

16

The Seventh Circuit has determined that "the defendant who cannot pay a large award of punitive damages can point this out to the jury so that they will not waste their time and that of the bankruptcy courts by awarding an amount that exceeds his ability to pay." *Kemezy v. Peters*, 79 F.3d 33, 36 (7th Cir. 1996). Although the *Kemezy* court explained that "[t]he defendant should not be allowed to plead poverty if his employer . . . is going to pick up the tab," Illinois law prevents the District from indemnifying the Individual Defendants for an award of punitive damages. 745 ILCS 10/2-302 (West 2001)("It is hereby declared to be the public policy of this State, however, that no local public entity may elect to indemnify an employee for any portion of a judgment representing an award of punitive or exemplary damages.")[8] Because Illinois law prevents the District from indemnifying the Individual Defendants for punitive damages, there is no danger that the jury will be misled by evidence of the Individual Defendants' limited resources.

Officer Spina's Motion in Limine No. 1 is denied, and the Individual Defendants are free to present evidence of their net worth to the jury.

---

[8] Presently, the District has refused to indemnify Officer Nudell even for his defense costs in this matter.

## B.   Motion in Limine No. 2

Officer Spina seeks to prevent the District from retreating from certain representations the District made in state court and prior administrative proceedings, or in pleadings before this Court.  Specifically, Officer Spina seeks to bar the District from:  1) denying that the actions of Sergeant Calabrese, Officer Jones, and/or Officer Nudell constituted sexual harassment, or that Sergeant Calabrese's response to Plaintiff's complaints were inadequate; 2) claiming that what happened to Plaintiff was not because of her gender; and 3) asserting that the District required its employees to follow Executive Order 91-4 or the Cook County Human Rights Ordinance prior to 1997.

Officer Spina contends that the District is judicially estopped from denying the assertions listed above.  The doctrine of judicial estoppel protects courts "from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories."  *Levinson v. United States,* 969 F.2d 260, 264 (7th Cir. 1992).  The Seventh Circuit has identified three prerequisites to imposing judicial estoppel: 1) the later position must be clearly inconsistent with the prior position; 2) the facts at issue should be identical; and 3) the party must have convinced the first court to adopt its earlier position. *Ezekiel v. Michel,* 66 F.3d 894, 904 (7th Cir. 1995).  Once these prerequisites have been established, it is within the Court's

discretion to invoke judicial estoppel. *Rudd v. Chicago Assoc. for Retarded Citizens, Inc.*, 35 F. Supp. 2d 1088, 1093 (N.D. Ill. 1999). "Finally, although the doctrine is called judicial estoppel, it is equally applicable when a party seeks to repudiate a favorable order from an administrative proceeding in a subsequent judicial proceeding." *Id.* (*citing Chaveriat v. Williams Pipe Line Co.,* 11 F.3d 1420, 1427 (7th Cir. 1993)).

In administrative proceedings before the Cook County Board, the District vigorously argued that Sergeant Calabrese, Officer Jones, and Officer Nudell should be suspended or terminated, largely, because the District believed that they committed or allowed the acts of which Officer Spina complains. The District's success before the Commission, however, was limited. Although the Commission recommended that Officer Nudell be terminated, this determination was reversed by the Circuit Court of Cook County, in a decision issued by Judge Ellis Reed. Similarly, although Officer Jones is no longer employed by the District, Officer Jones left his position following his suspension. Therefore, Officer Spina's ability to satisfy the third of the three elements of judicial estoppel – that the District successfully convinced a court or administrative body to adopt its position – is questionable. [9]

---

[9] Of course, this evidence would also be admissible as an admission against interest. This evidence would, of course, be very persuasive, even if it would not conclusively establish the

The Court need not resolve this issue, however, as the Court has already determined that Defendants' discovery abuses relieve Officer Spina of the obligation of having to prove these assertions at trial. Similarly, pursuant to the Court's imposition of sanctions, the District may not deny that the Individual Defendants' conduct was motivated by Officer Spina's gender. However, the Court finds that, with regard to Executive Order 91-4, Officer Spina's Motion is denied. The District made clear in its answer to Interrogatory No. 5 that, prior to 1997, the District was governed by Executive Order 91-4. While the District's Answer to Plaintiff's Complaint was less than clear, it did not admit that Executive Order 91-4 did not apply.

## C. Plaintiff's Motion in Limine No. 3

Officer Spina seeks to prevent Defendants from introducing evidence regarding her romantic relationship with Officer Flynn, Officer Flynn's subsequent suicide in her home, and a gynecological symptom that appeared in 1997. Officer Spina contends that Federal Rule of Evidence ("FRE") 412 bars evidence of sexual behavior and reputation in certain instances. Contrary to Defendants' assertions, Officer Spina is correct that FRE 412 applies in sexual harassment cases. *See* Fed. R. Evid. 412 advisory committee notes; *Sheffield v. Hilltop Sand & Gravel Co.*,

_____

District's position with regard to Sergeant Calabrese, Officer Jones, and Officer Nudell's conduct.

*Inc.*, 895 S. Supp. 105 (E.D. Kan. 1995) (applying FRE 412 to sexual harassment case). Nevertheless, the Court finds that this evidence falls within an exception created by FRE 412. Fed. R. Evid. 412 (b)(2).

Rule 412 recognizes that, even when evidence falls within the scope of inadmissible evidence under this Rule, an exception to this exclusion is appropriate in civil cases when the probative value of the evidence outweighs its harm to a victim, or when the victim places the issue in controversy. Fed. R. Evid. 412 (b)(2). In this case, evidence of Officer Spina's relationship with Officer Flynn is relevant because Officer Spina contends that: 1) Officer Nudell's remarks that Plaintiff was "Irish by injection," 2) rumors by various officers that Officer Spina and Officer Flynn were romantically involved, and 3) officers seeking to obtain proof of a sexual relationship between Officer Spina and Officer Flynn all constitute sexual harassment against her. In addition, Officer Spina will attempt to persuade the jury that her emotional distress results solely from the sexual harassment, and is not related to the fact that Officer Flynn committed suicide in their home or the gynecological symptom.

Evidence of Officer Spina's romantic involvement with Officer Flynn is relevant to the issue of the egregiousness of the conduct directed toward Officer Spina. Similarly, Officer

Flynn's subsequent suicide and the gynecological symptom are relevant to Officer Spina's emotional state. The Court is mindful of the fact that this evidence concerns Officer Spina's private activities, occurring outside of the workplace. *See Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 69 (1986) (noting that an employee's workplace behavior may be relevant in a sexual harassment case). Nevertheless, the fact that the rumors about Officer Spina and Officer Flynn may have had some basis in fact could indicate that the Defendants were only boorish, and not simply fabricating wild tales about Officer Spina. And despite Dr. Nancy Baker's deposition testimony that Officer Spina's emotional distress resulted solely from the harassment, the Defendants are entitled to challenges that conclusion at trial. Specifically, a jury would likely find relevant the fact that, in addition to the harassment, Officer Spina's boyfriend committed suicide in their home and Officer Spina learned of a troubling gynecological symptom prior to her decision to seek psychiatric counseling.

Officer Spina correctly notes, however, that in order to introduce evidence under FRE 412(b), a party must comply with the specific procedural requirements of FRE 412(c). Rule 412(c) requires parties seeking to offer evidence under the exceptions created by FRE 412(b) to file a motion with the court 14 days before trial describing the evidence, and requires the Court to

hold a hearing on the motion under seal. Fed. R. Evid. 412(c)(1) and (2). However, the Rule also provides that the Court may allow the motion to be filed at a later time, or even at trial for good cause. Fed. R. Evid. 412(c)(1)(A). Caselaw further instructs that the failure to file such a motion may be harmless error. *Beard v. Flying J, Inc.*, 266 F.3d 792, 801 (8th Cir. 2001).

The Court finds that Defendants' filings to date have fully apprized Officer Spina that Defendants intend to present evidence of the romantic, domestic relationship between Officer Spina and Officer Flynn, of Officer Flynn's suicide, and of the gynecological symptom that appeared in 1997. The Court will conduct a brief hearing at the pretrial conference scheduled for Monday, November 26, 2001 on the matter, and allow the parties to be heard. The Court will limit the evidence presented, and the manner in which it may be presented, at trial to that evidence that the Court determines is relevant and not unduly prejudicial.

### D. **Plaintiff's Motion in Limine Nos. 4 and 5**

Officer Spina next requests that Defendants be prevented from denying that they were acting within the scope of their employment, for the benefit of the District, as the agents of the District, and under color of state law. All Defendants, with the exception of Officer Jones, made this admission in their Answer to Plaintiff's Complaint. Defendants are bound by this judicial

admission and are prevented from introducing evidence to the contrary. *Help at Home, Inc. v. Medical Capital, L.L.C.*, 260 F.3d 748, 753 (7th Cir. 2001).

Although Officer Jones denied that he was acting under color of state law in the Answer to Plaintiff's Amended Complaint, in the Final Pretrial Order, Defendants concede that they were <u>all</u> acting under color of state law, without excluding Officer Jones. Agreed Statement of Uncontested Facts, ¶ 1. This subsequent judicial admission is binding on Defendants. *Id.; Vaughn v. King,* 167 F.3d 347, 352 (7th Cir. 1999) ("Pretrial orders supersede the pleadings.")

Despite the admission, Defendants argue that they are entitled to present evidence that Officers Jones and Nudell did not have supervisory authority over Plaintiff, apparently because they view the issues of "under color of state law" and supervisory authority over Officer Spina as somehow distinct. Defendants fail to grasp the scope of their judicial admissions. In the context of § 1983, the two concepts are interrelated. By admitting that they were acting under color of state law, Defendants were necessarily conceding that they were exercising supervisory authority over Plaintiff.

Section 1983 claims require plaintiffs to demonstrate, among other elements, that defendants were acting "under color of state law." *See Webb v. city of Chester, Illinois,* 813 F.2d 824, 828

(7th Cir. 1987). "Typically, liability under the Equal
Protection Clause for sexual harassment in the workplace is
predicated upon some authority that the wrongdoer has over the
victim. Otherwise it is difficult to establish that the abusive
action was perpetrated 'under color of state law' rather than as
an essentially private act of sexual harassment." *Woodward v.*
*City of Worland,* 977 F.2d 1392, 1401 (10th Cir. 1992).
Therefore, when Defendants admitted that they were acting under
color of state law, they were conceding that they had the
requisite authority - supervisory or otherwise - over Officer
Spina.

To the extent Defendants are seeking to establish that they
were acting under color of state law, but were not acting in a
supervisory position - and caselaw suggests that, in certain
instances, this may be possible - they have not made such a
showing. Moreover, it appears to the Court that Defendants do
not seek to introduce evidence that Officers Jones and Nudell
were not acting in a supervisory capacity for any purpose other
than to defeat Officer Spina's § 1983 claim. Because the Court
finds that Defendants have already admitted that the Individual
Defendants were acting under color of state law, Defendants are
barred from presenting evidence to the contrary.

## IV. Plaintiff's Rule 37(c)(1) Motion

Officer Spina asks the Court to prevent Defendants from introducing testimony and evidence not properly produced prior to the close of discovery. In particular, Officer Spina directs the Court's attention to individuals identified in Defendants' Supplementary Answer to Interrogatory 4, which was delivered to Officer Spina at 6:55 p.m. on the last day of discovery. The Court grants Officer Spina's Motion in its entirety.

1. Defendants may not introduce testimony or evidence not disclosed in response to Plaintiff's discovery requests prior to the close of discovery on August 15, 2001.

2. Defendants may not introduce testimony from any of the individuals identified in Defendants' Supplementary Answer to Interrogatory 4 beyond the information provided in their interviews with IAD investigators.

3. Defendants may not introduce any evidence not produced to Plaintiff prior to the close of discovery.

4. Defendants may not introduce the testimony of any witness or materials not identified for this purpose in answering Interrogatories or Requests to Produce that the harassment alleged by Plaintiff was mere "shop talk."

5. Defendants may not introduce the testimony of any witness or materials not identified for this purpose in answering Interrogatories or Requests to Produce regarding Plaintiff's

response or reactions to specific statements or actions she claims are sexual harassment.

     6.   Defendants may not introduce the testimony of any witness or any materials not identified for this purpose in answering Interrogatories or Requests to Produce that Plaintiff told or made dirty or sexual jokes or statements.

     7.   Defendants may not introduce the testimony of any witness or any materials not identified for this purpose in answering Interrogatories or Requests to Produce that the pornographic materials in Plaintiff's police mailbox were placed there by non-District personnel.

## V.  Defendants' Motions in Limine

### A.  Plaintiff Cannot Present Evidence Of Remedial Measures

Defendants filed a Motion in Limine to bar Officer Spina from presenting evidence of Officer Jones and Nudell's termination and Sergeant Calabrese's suspension.  Defendants are correct that FRE 407 codifies the common law exclusionary rule for remedial measures. Fed. R. Evid. 407.  The advisory committee's note to Rule 407 recognizes that terminating an employee can be a "remedial measure" following an injury-producing event, and should not be presented to the jury.  *See also Wanke v. Lynn's Transp. Co.,* 836 F. Supp. 587, 595 (N.D. Ind. 1993) (excluding "post-event dismissal or discipline of an employee responsible for the event").  Therefore, Defendants'

Motion in Limine regarding subsequent remedial measures is
granted.

However, consistent with this Court's ruling, the District
is estopped from distancing itself from the position it took in
administrative proceedings against these officers, arguing before
the Commission that these defendants committed the acts charged
by Officer Spina, and otherwise harassed Officer Spina.

## B. Plaintiff May Present Evidence Of Joanne Robinson's Report

Defendants contend that all conclusions and analyses in
Joanne Robinson's report regarding sexual harassment within the
District is inadmissible.  The Court disagrees.

Federal Rule of Evidence 803(8)(C) creates a hearsay
exception to permit the admissibility of governmental
investigatory reports that are sufficiently reliable.  Fed. R.
Evid. 803(8)(C).  The Rule encompasses "factual findings
resulting from an investigation made pursuant to authority
granted by law, unless the source of information or other
circumstances indicate lack of trustworthiness."  *Id.*[10]
Investigatory reports that also include opinions and conclusions,

_____

[10]  The advisory committee's note to Rule 803 sets forth
four factors that a court should consider in determining
trustworthiness: 1) the timeliness of the investigation; 2) the
investigator's skills and expertise; 3) whether a hearing was
held; and 4) potential motivation problems.  The Defendants
wisely do not argue that Ms. Robinson's report is not
trustworthy.

or so-called evaluative reports, are also covered by FRE 803(8)(C). "As long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report." *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 170 (1988).

Defendants counter that the self-critical analysis privilege prevents Officer Spina from introducing any of the analyses and/or conclusions contained in Ms. Robinson's report. The Seventh Circuit, like most circuit courts, has yet to determine whether the self-critical analysis privilege exists at federal common law. *See In re Mercury Finance Co. of Illinois,* No. 97 C 3035, 1999 WL 495903, at *4 (N.D. Ill. July 12, 1999). However, even assuming that the privilege exists, Defendants have failed to demonstrate that it should apply in this case.

The parameters of the privilege, like the existence of the privilege itself, are rather vague. The privilege "is grounded on the premise that 'disclosure of documents reflecting candid self-examination will deter or suppress socially useful investigations and evaluations or compliance with the law,'" *Morgan* v. Union Pacific R.R. Co., 182 F.R.D. 261, 264 (N.D. Ill. 1998)(quoting *Sheppard v. Consolidated Edison Co.,* 893 F. Supp. 6, 7 (E.D.N.Y. 1995)). Therefore, the Court must "balance the public interest in protecting candid corporate self-assessments

against the private interest of the litigant in obtaining all relevant documents through discovery." *Morgan*, 182 F.R.D. at 264.

Courts that do recognize the privilege have identified four elements that the party seeking to assert the privilege must establish: 1) the materials were prepared for mandatory government reports; 2)the privilege is being asserted only to protect subjective, evaluative materials; 3) the privilege is not being asserted to protect objective data in the same report; and 4) the policy favoring exclusion clearly outweighs Plaintiffs' need for the information. *Tice v. American Airlines,* 192 F.R.D. 270, 272 (N.D. Ill. 2000). In the instant case, Defendants cannot demonstrate that Ms. Robinson's report is a "mandatory government report." *Hardy v. New York News, Inc.,* 114 F.R.D. 633, 641 (S.D.N.Y. 1987) ("in the area of employment discrimination virtually every court has limited the privilege to information or reports that are mandated by statute or regulation.") Moreover, the Court finds that, given Defendants' repeated failure to comply with the Court's discovery orders and Plaintiff's discovery requests, Plaintiff's need for the report far outweighs the policy favoring exclusion. Therefore, Defendants' Motion in Limine with regard to Ms. Robinson's report is denied.

30

## C. Chief Penny Harrington's Testimony is Admissible as Expert Testimony.

Defendants seek to bar certain opinion testimony by Chief Penny Harrington, Officer Spina's police practices expert. Defendants challenge seven of Chief Harrington's opinions as inadmissible.

Initially, the Court notes that a review of Chief Harrington's background demonstrates that she is qualified to testify with regard to police practices. She has been an officer since 1964, and worked in management positions in the Portland Police Bureau for approximately 10 years. Chief Harrington has been appointed to many Blue Ribbon Panels, including the State of Oregon Board on Police Standards and Training and the Equity Task Force of the Los Angeles Police Commission. In 1995, Chief Harrington became the Director of the National Center for Women and Policing. Since 1996, she has served as a consultant for the U.S. Department of Justice, Civil Rights Division, Employment Litigation Unit on employment discrimination issues. This sampling of Chief Harrington's experience demonstrates her expertise to testify in this matter.

In addition, the Court finds that, in general, Chief Harrington's testimony will tend to assist the jury in understanding the evidence. *See Monfils v. Taylor*, 165 F.3d 511, 520 (7th Cir. 1998) (discussing expert testimony in a § 1983 case). Although juries may be familiar with general concepts of

discrimination, Chief Harrington's insight with regard to police standards for dealing with sexual harassment and discrimination will be useful to the jury.

The Court will now address Defendants' specific objections. Defendants first contend that Chief Harrington should not be permitted to testify that the District discriminated against Officer Spina because of her gender and that it failed to take measures to address harassment and discrimination in the Department. First, the Court rejects Defendants' assertion that such testimony is not admissible because it is not supported by scientific data. Chief Harrington's testimony need not satisfy the specific test announced by the United States Supreme Court's in *Daubert v. Merruk Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 581 (1993) for determining the admissibility of scientific evidence. *See Kumho Tire Co.* v. Carmichael, 526 U.S. 137, 150 (1999)(noting that, in cases that do not involve engineering or scientific expert testimony, the "relevant reliability concerns may focus upon personal knowledge or experience.") In this case, Chief Harrington's opinions are based upon her specialized knowledge of law enforcement procedures and policies, sexual harassment, and women in policing. As such, her testimony is admissible.

Moreover, Chief Harrington's testimony does not constitute an inadmissible legal conclusion. Courts have admitted expert testimony concerning whether a defendant's conduct has satisfied

certain norms. *Nieto v. Kapoor*, CIV 96-1223 MV/JHG, 1998 U.S.
Dist. LEXIS 22490 (D.N.M. Sept. 17, 1998) (permitting expert to
testify that an employer should have investigated a plaintiff's
allegations and that the employer was remiss for failing to
discipline the alleged harasser in a hostile work environment
case). Therefore, to the extent that Chief Harrington confines
her testimony to her opinion that the District's conduct was
inappropriate based upon generally accepted police custom and
practice, her testimony is not an inappropriate legal conclusion.
*See Zuchel v. City of Denver*, 997 F.2d 730 (10th Cir. 1993)
(permitting a police expert to testify regarding the use of
deadly force.)

   Defendants' objections to Chief Harrington's second, third,
fourth, and fifth opinions largely mirror their objection to her
first opinion. Defendants challenge the admissibility of these
opinions on the grounds that they are unreliable, and that Chief
Harrington's methods are untested because they are not based on
scientific evidence, citing *Cummins v. Lyle* Industries, 93 F.3d
362 (7th Cir. 1996). The Court finds that the *Cummins* case is
readily distinguishable. In *Cummins,* the court explained that,
in cases where an expert seeks to testify about an alternative
design of a machine, testing is of paramount importance. *Id.* at
368-69 (expert conceded that testing was a necessary part of the
design process, but that he had not tested any of the machinery

33

in that case.)  The *Cummins* case has little application to this case, which does not involve a scientific opinion.  *Id.* at 369 (noting that statistics and data generated by others in the field is also useful).

Defendants appear to be under the misapprehension that a civil rights plaintiff may present only expert scientific testimony.  There is, of course, no such limitation.  Expert testimony regarding police standards is admissible evidence. *Egebergh v. Sheahan*, No. 96 C 5963, 2001 WL 15945, at *10-11 (N.D. Ill. Jan. 4, 2001) (finding that an expert's methodology of evaluating specific facts in light of law enforcement policies in place is entirely appropriate).  As the Court has already noted, Chief Harrington's background demonstrates that her testimony is clearly permissible.  She is uniquely qualified to testify on the subject of sexual harassment and discrimination policies within a police department, including that the Defendants' response to Officer Spina's complaints was deficient.[11]  *Nieto, at *30.* Therefore, the Court rejects Defendants' attempt to exclude Chief Harrington's testimony on the basis that it is not reliable.

Defendants then claim that Chief Harrington cannot testify with regard to whether Officer Spina is employable in light of

---

[11]  The Court finds only that Chief Harrington is qualified to testify and that her testimony is admissible.  Her testimony is subject to cross examination, and it is for the jury to decide how reliable or persuasive that testimony is.

her having filed this lawsuit. The Court finds that Chief
Harrington has specialized knowledge with regard to the impact
that filing a discrimination and harassment suit against a law
enforcement department has on the plaintiff's ability to find
work within the law enforcement field. Chief Harrington may
testify on this matter to the extent that she confines her
testimony to her opinion, and does not offer a legal conclusion.

Finally, the Court agrees that Chief Harrington cannot
testify regarding whether Officer Spina suffers from emotional
distress because of the District's alleged retaliation. Despite
Chief Harrington's experience in recognizing emotional stress in
her officers, the Court finds that such testimony is better left
to mental health professionals.

### D. Plaintiff May Not Present Evidence to the Jury Regarding the Tax Consequences of a Potential Judgment

Defendants seek to bar Officer Spina from discussing,
arguing, or instructing the jury with regard to the tax
consequences of any judgment she should receive. In response,
Officer Spina directs the Court's attention to a number of
wrongful death cases that teach that a court should not refuse to
instruct a jury that a plaintiff's judgment is <u>not</u> taxable.

The Court acknowledges that many courts have held,
particularly in cases filed under the Federal Employers Liability
Act ("FELA"), that, because a verdict for tort damages is not
taxable, and because juries have become so tax conscious, a court

should not refuse to instruct a jury that a wrongful death award is not subject to federal taxation. *See, e.g., Norfolk & Western R.R. Co. v. Liepelt,* 444 U.S. 490 (1980) (reversible error for the trial court in this FELA case to refuse defendant's instruction that an award would <u>not</u> be taxable). However, Officer Spina has failed to cite, and this Court has not located, a single case mandating that a jury be instructed with regard to the tax consequences of an award under Title VII.

Moreover, the policy behind issuing such an instruction in the wrongful death and FELA cases upon which Officer Spina relies is simply not present here. *See, e.g., In re: Air Crash Disaster,* 701 F.2d 1189 (7th Cir. 1983). In those cases, the courts determined that juries likely presumed that awards were in fact taxable and might act to overcompensate the plaintiffs. Notably, the courts were concerned that survivors of a decedent would obtain a windfall in the form of a tax-free judgment, when in fact the survivors were entitled to only what their decedent would have contributed to their household – the decedent's income after taxes. In this case, it is apparently Officer Spina who hopes to obtain the windfall, by encouraging the jury to return an award that, in effect, negates her tax obligations.

In this case, the Court sees no reason to inform the jury that any award to Officer Spina is likely taxable. Instead of clarifying the issue for the jury, such an instruction might

instead inappropriately signal to the jury that this is a special matter and, contrary to Congressional and IRS policy, that Officer Spina should be compensated at such a level so as to relieve her of her tax burden. In the absence of binding precedent to the contrary, this Court finds that it would be inappropriate to instruct the jury in this manner.

## VI. Officer Nudell's Motion In Limine

Officer Nudell seeks to bar Officer Spina from introducing: 1) "any and all conduct by Michael Nudell alleged to have occurred outside of the presence of the plaintiff and which does not concern or relate to the plaintiff or to her claims. Such conduct includes, but is not limited to, an alleged incident involving the Deerfield Police and an alleged incident taking place at a stable where Nudell maintained horses;" 2) conduct by Officer Nudell "outside the relevant limitations period;" and 3) "accusations" that Officer Nudell "was 'connected,'" or "'had influence'". Nudell's Mtn in Lmn.

For the most part, Officer Nudell's motion is too vague to permit any meaningful ruling with respect to the introduction of evidence or argument at trial. The Court does agree, however, that to the extent that Officer Spina attempts to introduce evidence of the incident taking place in Deerfield or at the horse stables, or other evidence reflecting poorly on Officer Nudell's character, simply to show that Officer Nudell was acting

37

in conformity with his character, she is barred from doing so. *Mulney v. Carlson,* 125 F. Supp. 2d 1117, 1119 (N.D. Ill. 2000) (evidence of prior bad acts is not admissible under Fed. R. Evid. 404(b) to prove a propensity to commit further such acts).

Officer Spina claims that such evidence is admissible because she is offering evidence of these incidents to show 1) Officer Nudell's intent to harass her because of her gender; and 2) the District's failure to investigate and discipline Officer Nudell. *Citing Smith v. Sheahan,* 189 F.3d 529, 533 (7th Cir. 1999)(allowing evidence that defendant had harassed plaintiff's coworker to establish defendant's motive and intent); *Molnar v. Booth,* 229 F.3d 593, 603 (7th Cir. 2000) (noting that evidence establishing that a defendant is on notice of its employee's conduct is not barred by FRE 404). However, this Court has already determined that Officer Spina need not prove that Officer Nudell harassed her because of her gender.

To the extent that Officer Spina seeks to introduce this evidence to prove that the District repeatedly failed to investigate and discipline Officer Nudell for harassing women, and subsequently attempted to cover up the allegations, this evidence is relevant to Officer Spina's claims against the District. Before such evidence will be admitted at trial, however, Officer Spina must lay a proper foundation, and demonstrate that the conduct/complaints occurred, that District

38

policy required an investigation and discipline, and that the District failed to follow its own policy.

With regard to Officer Spina's attempt to introduce evidence that Officer Nudell had political connections that shielded him from investigation and discipline, Officer Spina must establish that such evidence is both relevant and not hearsay, Fed. R. Evid. 802, before such evidence will be admitted at trial.

Finally, the Court denies Officer Nudell's motion with regard to evidence concerning unidentified conduct that occurred "outside the relevant limitations period" and other unidentified conduct that Officer Nudell alleges is not relevant to Officer Spina's claims.

## VII.   Officer Nudell's Motion For Indemnification

Officer Nudell contends that Illinois law and the Collective Bargaining Agreement ("CBA") between the District and the Fraternal Order of Police ("FOP") require the District to indemnify him for the cost of his defense.  The District correctly points out that Illinois law regarding indemnification of local public employees for defense and court costs is purely discretionary, and that the District cannot be compelled to indemnify Officer Nudell on the basis of 745 ILCS 10/2-302 (West 2001) ("the [local public entity] may elect to . . .   [a]ppear and defend the claim.") However, the CBA does require the District to indemnify Officer Nudell.

39

The CBA requires the District to indemnify employees sued in a civil matter for conduct that is within the scope of his employment. Specifically, Section 9 of the CBA provides that:

> Officers shall have legal representation by the District in any civil cause of action brought against an officer resulting from or arising out of the performance or execution of his/her duties and within the scope of his/her employment, or in the furtherance of the business of the District. Civil causes of action which arise from acts committed by the Officer solely for his/her own benefit and which are not ordered, authorized, directed or sanctioned by the District shall not, for purposes of this document, be considered within the scope of the Officer's employment, nor pursuant to the performance of his/her duties.

For purposes of Officer Nudell's Motion, the parties disagree as to whether Officer Nudell was acting within the scope of his employment when he was allegedly harassing Officer Spina. However, in the Final Pretrial Order, Defendants concede that Officer Nudell "was acting within the scope of his employment and for the benefit of his employer, Defendant Forest Preserve, and as the agent of his employer, at the times relevant to this suit," Agreed Statement of Uncontested Facts, at ¶ 38, and that all defendants were acting under color of state law. *Id.* at ¶ 1. "Statements in the pretrial order . . . constitute judicial admissions." *Ash v. Wallenmeyer*, No. 85 C 8557, 1990 WL 70447, at *3 (N.D. Ill. May 4, 1990); *Oak Mill Enterprises 2000 Inc. v. Knopfler*, 141 B.R. 1000, 1006 (Bankr. N.D. Ill. 1992) (judicial admissions are conclusively binding on a party). Because the District has conceded that Officer Nudell was acting within the

scope of his employment, the District is liable for his defense costs under the CBA.

Even without the District's admission, the Court finds that caselaw supports the conclusion that Officer Nudell was acting within the scope of his employment. The Seventh Circuit has adopted a very broad definition of "scope of employment." The Court recognizes that "those actions having an intimate bearing on the duties normally assigned to the office of employment, even though usurped or misused, must be considered as falling within the term 'scope of employment.'" *Coleman v. Smith*, 814 F.2d 1142, 1149 (7th Cir. 1987)(finding that scope of employment is measured by objective criteria and not an employee's subjective evil intent). In *Coleman,* the Seventh Circuit ruled that a village mayor and police chief were acting within the scope of their employment when they fired and later falsely arrested a village employee in an effort to thwart the employee's investigation into their allegedly criminal activities. *Id.* The Court recognized that, even though the employees had ulterior motives in harassing the plaintiff, they were exercising the duties encompassed by their offices in firing and arresting the plaintiff. *Id.* at 1150. *See also, Hibma v. Odegaan*, 769 F.2d 1147, 1152 (7th Cir. 1985)(finding that acts that are closely connected with or incidental to the employee's job are within the scope of employment, even if the acts are improper).

41

Similarly, Officer Nudell was acting within the scope of his employment when he allegedly harassed Officer Spina. Admittedly, some of Officer Spina's complaints involved lewd materials being mailed to her home. However, the majority of the charges against Officer Nudell relate directly to his interaction with Officer Spina in their capacities as fellow police officers. Most of the interaction occurred while Officer Nudell was employed by the District and while Officer Nudell was on duty. Officer Nudell's inappropriate remarks, such as refusing to take orders from Officer Spina because of her gender, were made within the context of conversations that officers have every day while on the job. Therefore, Officer Nudell's conduct with regard to Officer Spina, although highly inappropriate, was incidental to his duties as a police officer and within the scope of his employment.[12]

This conclusion is further bolstered by the District's curious decision to represent Officer Jones in this matter. The Court is puzzled by the District's decision to represent Officer Jones, but not Officer Nudell. Officer Spina's charges against

_____

[12] The CBA further provides that actions undertaken for an officer's own benefit and without the authorization of or direction from the District are not "within the scope of employment." Notably, Officer Spina has alleged that the District did, in fact, sanction this conduct by repeatedly failing to remedy the recurrent problem of sexual harassment in the workplace. With regard to the CBA's cooperation clause, the District does not alleged that Officer Nudell has refused to cooperate with regard to Officer Spina's lawsuit.

Officer Nudell do not appreciably differ from her charges against Officer Jones. In addition, unlike Officer Nudell, Officer Jones operated under a cloud of serious criminal suspicion both before and during his tenure with the Department.

The Court has reviewed numerous documents produced by the District in its latest round of production relating to Officer Jones. Without revealing the contents of said documents, the Court notes that Officer Jones was arrested for, pled guilty to, and was sentenced to four years probation in Florida for conspiracy to distribute cocaine.

While he was on probation for this offense, he was hired by the Department as a seasonal police officer. Even during his tenure as a police officer with the Department, it was strongly suspected that Officer Jones was still engaged in criminal activities. In addition, Chief Castans knew about Officer Jones' criminal background years before Officer Jones ultimately left the Department. However, Officer Jones remained employed with the Department until Officer Spina's charges resulted in his suspension.

Notwithstanding the similarity of the charges against Officer Nudell and Officer Jones, and notwithstanding Officer Jones' criminal history, the District saw fit to provide Officer Jones with representation in this lawsuit. The Court can discern no rational reason for the more favorable treatment accorded

Officer Jones.  One distinction between Officer Jones and Officer Nudell is the fact that Officer Nudell chose to litigate the District's decision to terminate him, while Officer Jones quietly left his position with the Department.  The Court finds that this distinction does not warrant the Department's refusal to provide Officer Nudell with a defense.  Accordingly, the Court directs the District to indemnify Officer Nudell for the cost of his defense.[13]

## CONCLUSION

The Court will exclude and admit evidence in a manner consistent with this Opinion.  However, the Court's ruling on a particular motion does not mean that all evidence contemplated by the motion will be admitted or excluded at trial.  The Court recognizes that, depending upon the exact testimony and evidence presented at trial, evidence that the Court previously deemed admissible may be limited or excluded, and excluded evidence may be admitted for a purpose not anticipated at the time of this ruling.  Thus, the Court will entertain objections on individual proffers as they arise at trial, despite the fact that the proffer falls within the scope of a motion in limine.

---

[13]  In a related state court action, where Officer Nudell challenged the District's decision to fire him, the District strongly argued that his termination was warranted because Officer Nudell committed the acts at issue in this case.  Not surprisingly, Officer Nudell denies most of these charges, both in federal and state court.  This conflict of interest compels separate representation in this matter.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Sanctions is GRANTED in part and DENIED in part, Plaintiff's Motion for Judgment as a Matter of Law is GRANTED, Plaintiff's Motions in Limine are GRANTED in part and DENIED in part, Plaintiff's Rule 37(c)(1) Motion is GRANTED; Defendants' Motions in Limine are GRANTED in part and DENIED in part, Defendant Nudell's Motion in Limine is GRANTED in part and DENIED in part, and Defendant Nudell's Motion for Indemnification is GRANTED.

DATED: November 22, 2001     ENTER:

ARLANDER KEYS
United States Magistrate Judge