# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 1393 | **DATE** | 5/31/2002 |
| **CASE TITLE** | | Spina vs. Forest Preserve Cook County | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Memorandum Opinion and Order entered. Defendant Forest Preserve District of Cook County's ("the District") Motion for a New Trial [#147] is denied. The District's Motion for a New Trial on the Issue of Damages [#146] is also denied. The District's Motion for Remittitur of Damages [#146] is granted. The Court finds that the jury's $3 million award to Plaintiff for compensatory damages is monstrously excessive. Therefore, the award is hereby reduced to a total of $300,000, which Plaintiff must accept within 21 days of this decision or she will be granted a new trial on the issue of damages only. Defendant Michael Nudell's Motion for Dismissal with Prejudice [#145] is denied, with leave to file a motion for summary judgment. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | 9 |
| | No notices required. | | number of notices |
| ✓ | Notices mailed by judge's staff. | | MAY 3 1 2002 |
| | Notified counsel by telephone. | | date docketed |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | | 5/31/2002 |
| | Copy to judge/magistrate judge. | | date mailed notice |

courtroom deputy's initials FT/ _____

Document Number

175

date/time received in central Clerk's Office

FT mailing deputy initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

MAY 3 1 2002

CYNTHIA C. SPINA,                          )
                                           )
            Plaintiff,                     )
                                           )    Case No. 98-C-1393
      v.                                   )
                                           )
FOREST PRESERVE DISTRICT OF COOK           )    Magistrate Judge
COUNTY, JOHN ZIELINSKI,                    )    Arlander Keys
JOHN TINETTI, CLARENCE CALABRESE,          )
MICHAEL NUDELL, HOWARD JONES,              )
and STEVEN CASTANS,                        )
                                           )
            Defendants,                    )

## MEMORANDUM OPINION AND ORDER

On December 12, 2001, this Court directed a verdict in favor
of Cynthia Spina on her sexual discrimination, harassment, and
retaliation claims against the Forest Preserve District of Cook
County (the "District"), pursuant to Title VII and 42 U.S.C. §
1983. A jury awarded Ms. Spina $3 million in damages. Currently
before the Court are the District's Motion for a New Trial; the
District's Motion for a New Trial on the Issue of Damages, or, in
the Alternative, for Remittitur of Damages; and Defendant Michael
Nudell's Motion for Dismissal with Prejudice. For the reasons
set forth below, the District's Motion for a New Trial is Denied;
the District's Motion for a New Trial on the Issue of Damages is
Denied; the District's Motion for Remittitur of Damages is
Granted; and Mr. Nudell's Motion is Denied, with leave to refile
a Motion for Summary Judgment.

175

## BACKGROUND

Plaintiff, Cynthia Spina, joined the Forest Preserve District of Cook County Department of Law Enforcement (the "District") as a police officer in 1993. After successfully completing her police training, Plaintiff requested that she be assigned to Area 2; there had never been a female officer assigned to Area 2, and Plaintiff believed that she would be an asset to the area. Despite her consistent hard work and dedication, Plaintiff was unprepared for the challenges presented by her fellow officers at Area 2. From the outset, Plaintiff's male colleagues berated, belittled, and isolated her because of her sex. Plaintiff attempted to remedy the problem by speaking with her coworkers, and then her superiors. Instead of addressing her legitimate concerns, they labeled her a "beefer," a complainer who could not get along with others.

The harassment escalated, and Plaintiff took her complaints up the chain of command. Plaintiff expected resolution, but instead encountered ignorance and apathy from officials at even the highest levels of the District's hierarchy. Plaintiff's complaints came at a substantial personal cost; Plaintiff's fellow officers and superiors turned up the heat on Plaintiff for taking her complaints outside of the area.

Finally, in February of 1997, Plaintiff complained to the President of the Cook County Board about the years of harassment

2

and the retaliation that she had endured at the District. On March 27, 1997, Plaintiff filed charges of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") against the District. This time, Plaintiff's complaints received formal attention; the District's Internal Affairs Department was ordered to conduct an investigation into Plaintiff's charges of harassment. Despite substantial interference from several District officials, the investigation proceeded. As a result of this investigation, certain officers were suspended and/or terminated.

This was not the end of Plaintiff's troubles at work, however. In retaliation for Plaintiff's complaints, her tires were slashed while at work, other officers refused to back her up or cooperate with her, and various officers spread inappropriate rumors about her. Plaintiff's superiors exacted their vengeance by holding Plaintiff to a higher standard with regard to sick days, vacation requests, job and vehicle assignments, and even lunch-break rules. Both the former and current Chief of Police have been overheard saying that they denied Plaintiff prestigious job assignments because of her complaints.

Plaintiff received her Notice of Right to Sue from the EEOC on December 18, 1997, and filed suit shortly thereafter. During the course of discovery, the District displayed the hubris that presumably led it to believe that it could ignore an

officer's legitimate claims of harassment; it repeatedly ignored Plaintiff's discovery requests and disobeyed court orders. Plaintiff filed several Motions to Compel, seeking access to relevant documents that the District refused to produce. Despite two court orders, the District refused to produce hundreds of relevant documents within its control, without any explanation.

On November 21, 2001, this Court issued an Order sanctioning the District for its flagrant disregard of the Federal Rules of Civil Procedure, and the authority of this Court. Pursuant to this Order, the District was barred from denying that: 1) certain officers sexually harassed Plaintiff; 2) all Defendants were acting under color of state law and within the scope of their employment; 3) Plaintiff's supervisors failed to properly respond to her complaints; 4) Plaintiff was subjected to the harassment because of her gender; and 5) the District's Chief of Police was a policymaker. The Order further prohibited the District from introducing at trial any evidence, witnesses, or documents not properly disclosed prior to the close of discovery.

Approximately one week before Plaintiff's trial was scheduled to begin, Officer Michael Nudell filed an Emergency Motion to sever his trial from the District's trial. Officer Nudell persuasively argued that he would suffer extreme prejudice if his trial was not severed from the District's, because the District had previously taken the position before a state court

that Officer Nudell had, in fact, sexually harassed Plaintiff, and the District's discovery abuses prevented it from distancing itself from those representations at trial. Plaintiff's adamant opposition to any delay was equally compelling. The District's failure to fully disclose in a timely manner the extent of its prior representations, or to otherwise notify the Court of its obvious conflict of interest with the individual Defendants had created yet another conundrum. The Court resolved the dilemma by ordering the parties to proceed to trial as scheduled, explaining that Plaintiff's case against the District and Plaintiff's case against the Individual Defendants would be decided by two separate juries.

At the close of the evidence, the Court explained to the juries that they would hear instructions and closing arguments as they pertained to either the District or the Individual Defendants. The Court directed a verdict on liability for Plaintiff against the District on her discrimination and retaliation claims under Title VII of the Civil Rights Act and Section 1983. The Court then instructed the jury assigned to decide the case against the District ("Jury A") -- outside of the presence of the other jury -- that the Court had already determined that the District had engaged in acts of sexual harassment, discrimination, and retaliation against Plaintiff. The Court explained that Jury A's function was to determine

whether those acts were the proximate cause of injuries to Plaintiff, and, if so, to determine the amount of damages to award to Plaintiff. The Court further explained that the law prevented Jury A from assessing punitive damages against the District, and that Plaintiff was entitled to receive only compensatory damages, as established at trial. During closing arguments, Plaintiff's attorney asked Jury A to award Plaintiff $2 million for damage to her reputation and for emotional distress.

The Court then instructed the second jury ("Jury B") that it would decide the case against the Individual Defendants only, including liability and damages, if any. After closing argument and instructions, Jury B adjourned for the day without deliberating.

Later that same day, Jury A returned a verdict, awarding Plaintiff $3 million in noneconomic compensatory damages against the District; $1 million more than her attorney had requested. The huge award made headlines in both of Chicago's major newspapers, and was featured on several morning television and radio shows. At least two of the members of Jury B were exposed to these media reports. The Court declared a mistrial with respect to Plaintiff's claims against the Individual Defendants.

### DISCUSSION

The District filed a Rule 59 Motion for a New Trial, and a second Rule 59 Motion For a New Trial on the Issue of Damages or, in the alternative, for a Remittitur of Damages. Defendant Nudell filed a Motion to Dismiss with Prejudice Plaintiff's Complaint as it pertained to him. The Court will address each motion in turn.

### I. The District is Not Entitled to a New Trial.

The District's Motion for a New Trial contains only scant citation to legal authority, and citation to the record or trial transcripts is nonexistent. The Motion appears to be nothing more than an attempt to preserve issues for review on appeal. Instead of setting forth the law governing the granting of a new trial, the District's Motion focuses primarily on an assertion that the Court's November 21, 2001 Order was in error; a decision that the District did not challenge in a Motion to Reconsider, and which the Court is not inclined to revisit at this juncture.[1]

---

[1] Motions for reconsideration serve a limited function. Courts will grant a Rule 59(e) Motion if the moving party can establish that 1) a significant change in the law has occurred; 2) the court patently misunderstood the party; 3) the court made its decision outside the adversarial issues presented to the court; 4) the court made an error of apprehension, not reasoning; or 6) new, significant facts have been discovered compelling reconsideration. Fed.R.Civ.P.59(e); *Russell v. Delco Remy Div.*, 51 F.3d 746, 749 (7th Cir. 1995). Motions for reconsideration that merely rehash old arguments or attempt to argue new theories that could have been previously raised will be denied. *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). Because the District has failed to demonstrate that the Court's

See generally *Parts and Elec. Motors, Inc. v. Sterling Elec., Inc.,* 826 F.2d 712, 717-18 (7th Cir. 1987) (noting that a defendant may not move for a new trial on grounds not raised during the trial itself.)

A new trial may be granted only if: 1) the verdict is against the clear weight of the evidence; 2) the damages are excessive; or 3) the trial was unfair to the moving party. *Allison v. Ticor Title Ins. Co.,* 979 F.2d 1187, 1196 (7th Cir. 1992). The Court focuses only upon the first and third issues, as the issue of whether the verdict was excessive is discussed below in detail.

The District's attempts to characterize the evidence as legally insufficient are without merit. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 151 (2000) (a verdict should be upheld unless there is no evidence supporting the jury's decision.) The evidence against the District was overwhelming. The testimony of Officers Perkins and Quintos, Sgt. William Dineen, JoAnne Robinson, and Chief Penny Harrington clearly established that the District failed to have in place procedures necessary for preventing and addressing sexual harassment, and that it failed to take appropriate measures to

---

Order imposing sanctions was the result of the "wholesale disregard, misapplication, or failure to recognize controlling precedent," even a procedurally proper Motion to Reconsider the Court's November 21st Order would be wholly without merit. *Id.*

remedy the harassment once it was brought to its attention. In addition, the Court is satisfied that Plaintiff's testimony, coupled with the testimony of Dr. Nancy Baker, established that the District's conduct caused her emotional distress. Therefore, the Court rejects the District's bald assertions that the directed verdict on liability was against the weight of the evidence. *See Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir. 2001)(noting that where, as here, the defendant fails to move for a directed verdict, a defendant can only successfully challenge the sufficiency of the evidence by establishing an absolute absence of evidence in support of the verdict.)

The District also argues that the Court erred by: 1) failing to instruct the jury as requested by the Forest Preserve; 2) allowing the trials to proceed simultaneously; 3) allowing Chief Harrington to testify that Plaintiff would not be able to find another position in law enforcement or realize her dream of becoming a police chief; and 4) permitting Dr. Baker to reveal that certain officers had been terminated, contrary to the Court's ruling on a prior motion in limine. Presumably, the District believes that each of these alleged errors, or a combination thereof, warrants a new trial.

The Court notes that, with regard to the challenged jury instruction, the District has neither submitted its proposed instruction nor identified the prejudice it suffered as a result

of the offered instruction.  The District, therefore, waives

consideration of this argument.  *United States v. Giovannetti*,

919 F.2d 1223, 1230 (7th Cir. 1990).  Similarly deficient are the

District's challenges to the Court's other alleged errors, as

described above.  Specifically, the District's Motion fails to

establish that it objected to these alleged errors at trial.[2]

*Sterling Elec., Inc.,* 826 F.2d at 717-18 (the defendant cannot

raise objections in a post-trial motion that it did not raise at

trial.)

In addition, Defendant fails to articulate how it was

prejudiced by permitting the trials of the District and the

individual officers to proceed simultaneously, or by permitting

Chief Harrington's testimony.  "A litigant who fails to press a

point by supporting it with pertinent authority . . . forfeits

the point."  *United States v. Giovannetti*, 919 F.2d 1223, 1230

(7th Cir. 1990).

Defendant's contention that Dr. Baker's violation of the

ruling in limine was so prejudicial as to warrant a new trial is

---

[2]  It is not the role of this Court to sift through the
voluminous record to confirm whether the District properly
preserved these issues for review -- an arduous task that the
District apparently decided was not worth its time to undertake.
*See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)
("Judges are not like pigs, hunting for truffles buried in
briefs.")

utterly without merit.  Following Mr. Nudell's objection[3] to Dr. Baker's reference to the District terminating officers, the Court instructed the jury to disregard the testimony.  The Court "presumes that the jury will follow an instruction to disregard inadmissible evidence unless there is an overwhelming probability that the jury will be unable to follow the court's instructions and a strong likelihood that the effect of the evidence would be devastating." *Wilson v. Groaning,* 25 F.3d 581, 587 (7th Cir. 1994).  Defendant's skeletal argument establishes neither that the jury likely disregarded the Court's instruction nor the requisite prejudice, and, therefore, is rejected. *Stanciel v. Gramley*, 267 F.3d 575, 580 (7th Cir. 2001).

The District similarly fails to identify its objections to the admission of alleged double hearsay throughout the trial. The Court notes, however, that admissions against interest made by a party-opponent are not hearsay under Rule 801(d) of the Federal Rules of Evidence.  Therefore, admissions made by the Chief of Police, and then repeated by an officer who was considered to be a managing agent of the District, are neither hearsay nor double hearsay, and are properly admissible. FRE 801(d).

---

[3] Once again, Defendant has not demonstrated that it objected to this testimony at trial, and that, therefore, review of this issue is appropriate.

In short, the District has failed to satisfy its burden of demonstrating that a new trial regarding liability is warranted under Rule 59. The verdict was supported by substantial evidence, and the District has failed to satisfy its burden of demonstrating that the "errors" that allegedly rendered its trial fundamentally unfair are properly before the Court. The District's Motion for a New Trial is Denied.

## II. Plaintiff Should Be Offered a Remittitur

Next, the District argues that the jury's award of $3 million in compensatory damages is excessive, and warrants either a new trial on the issue of damages, or offering to Plaintiff a remittitur of the award to no more than $200,000.

### A. The Jury's $3 Million Compensatory Damages Award Is Excessive.

The Seventh Amendment to the Constitution requires that the Court accord substantial deference to the jury's assessment of compensatory damages. *Ramsey v. American Air Filter Co., Inc.,* 772 F.2d 1303, 1313 (7th Cir. 1985). "Underlying this deference to a jury's assessment of damages is the acknowledgment that the actual measure of damages is an exercise of factfinding." *Cygnar v. City* of Chicago, 865 F.2d 827, 947 (7th Cir. 1989). The jury's award must, nevertheless, be reasonable to be sustained. *Id.* at 848.

The Seventh Circuit has directed district courts to consider three factors when evaluating whether a compensatory damages award warrants a new trial or remittitur: 1) whether the award is monstrously excessive; 2) whether there is a rational connection between the award and the evidence; and 3) whether the award is roughly comparable to awards made in similar cases. *Merriweather v. Family Dollar Stores of Ind.,* 103 F.3d 576, 580 (7th Cir. 1996). As a general rule, if the court determines that a damages award is excessive, remittitur, not a new trial, is the appropriate remedy. *Davis v. Consolidated Rail Co.,* 788 F.2d 1260, 1263 (7th Cir. 1986).

Admittedly, assessing whether an award is excessive is an inexact task. Complicating this task is the fact that pain and suffering, loss of reputation, and emotional distress are not goods traded on the open market, which result in an ascertainable market value. Valuing such compensatory damages requires juries and courts to place a dollar amount on experiences that are necessarily difficult to quantify monetarily. Nevertheless, the Court is convinced that the jury missed the mark; the jury's $3 million award is monstrously excessive, has no rational basis in the evidence, and exceeds exponentially awards made in similar cases.

At trial, Plaintiff presented the testimony of Dr. Nancy Baker, in support of her claim that Defendant's conduct caused

her emotional distress. Notably, Plaintiff has never sought or received professional mental health care or counseling. Prior to trial, however, at the request of her attorney, Plaintiff consulted with psychologist Dr. Nancy Lynn Baker on February 15, 2001. Dr. Baker instructed Plaintiff to fill out a questionnaire, which attempted to elicit Plaintiff's level of distress in the preceding 7 days. Plaintiff reported limited distress. However, Plaintiff indicated that she had experienced headaches, nervousness, shakiness, poor appetite, crying easily, difficulty sleeping, and other symptoms of emotional distress in the past.

Dr. Baker testified that her evaluation of Plaintiff's responses to the questionnaire indicated that Plaintiff either: 1) was not suffering from emotional distress; or 2) was in denial about the extent of her emotional distress. Dr. Baker concluded that Plaintiff was in denial about her emotional distress, and that she was suffering from an adjustment disorder, stemming from the Defendants' harassment and the District's failure to remedy harassment within the Forest Preserve Department. Dr. Baker conceded that Plaintiff's fiancé's suicide in 1999 had caused Plaintiff some emotional distress, but concluded that Plaintiff had been suffering from emotional distress, arising from the Defendants' conduct, for years prior to that tragic event.

Dr. Baker testified that the cumulative impact of the years of harassment and retaliation culminated in significant emotional pain. Dr. Baker explained that the District's conduct in ignoring Plaintiff's complaints, and in attempting to squash any meaningful investigation into her allegations, inflicted a new, separate, and significant emotional injury upon Plaintiff.

Dr. Baker opined that Plaintiff's emotional condition would improve if the stressors - that is, the harassment and retaliation - were removed. Nevertheless, Dr. Baker cautioned that it was unlikely that Plaintiff would ever fully recover from the effects of the Defendants' conduct toward her.

Plaintiff also testified to the existence and extent of her emotional damages. Plaintiff explained that she had dreamed of being a police officer from the time she was a child. Unfortunately, her experience with the District has dashed her dreams of being a police chief. Plaintiff detailed the hostile environment she encountered at the District; the pornography, the sexual comments, the rumors, the isolation, and the District's failure to give any credence to her complaints. Plaintiff testified that this conduct caused her embarrassment, humiliation, and stress. The stress manifested itself in the form of headaches, sleeplessness, weight loss, social isolation, and a loss of self esteem[4].

---

[4] The Court notes that Officer Theodoratas testified that the harassment had taken an obvious and substantial toll on Plaintiff, explaining the dramatic effect the District's behavior

15

Plaintiff also explained her fear of complaining to officials up the chain of command, knowing that she would pay the price for breaking the "code of silence" recognized by her fellow officers. Plaintiff's fears materialized in the form of slashed tires, repeated and unexplained hang-up phone calls, possible stalking by fellow officers, and the failure of another officer to "back her up" at a critical juncture in the field. Both Dr. Baker and Chief Harrington explained the importance of a police officer being able to trust in and rely upon her fellow officers; Plaintiff worried that her job was, in effect, more dangerous because she doubted whether she could fully trust or rely upon the officers in Area 2.

However reprehensible the District's conduct, the jury did not have the discretion to award what are, essentially, punitive damages, when no punitive damages are permitted. *Joan W. v. City of Chicago*, 771 F.2d 1020, 1025 (7th Cir. 1985.) Turning to awards made in similar cases, the Court notes that the Seventh Circuit has reviewed awards for emotional distress damages with a critical eye, cautioning that "[j]udges and juries must not be casual with other people's money." *Avitia v. Metropolitan Club of Chicago, Inc.,* 49 F.3d 1219, 1229 (7th Cir. 1995) (finding $21,000 award for emotional distress damages excessive); *Cygnar v. City of Chicago*, 865 F.2d 827, 848 (7th Cir. 1989) (emotional

---

had on Plaintiff's appearance and behavior.

16

distress award of $55,000 found **excessive** and reduced to $15,000 where the plaintiff retained position with the employer). *See also, Bennett v. Smith*, No. 96 C 2422, 2000 WL 1849029, at * 8 (N.D. Ill. Dec. 18, 2000)(reducing damages for humiliation, embarrassment, and emotional distress from $240,000 to $45,000[5], despite the fact that the plaintiff had been terminated and suffered from headaches, vomiting, and abdominal pain.)

Apparently aware of this precedent, Plaintiff correctly notes that this Court is not limited to considering damages awarded within the Seventh Circuit, or even to considering only those awards that have been specifically challenged as excessive. See *Joan W.,* 771 F.2d at 1023. Plaintiff then directs the Court's attention to numerous emotional distress awards in excess of $200,000. Many of these awards were not challenged as excessive and most of them were state court cases or were tried outside of the Seventh Circuit. While the Court is not prohibited from considering these verdicts, the Court is not free to ignore well- established precedent within the Seventh Circuit in evaluating the jury's award.

In some of the cases cited by Plaintiff, the courts employed standards that have been rejected by the Seventh Circuit. For example, in *Peckham v. University of Penn.*, 41 Pa.D. & C.4th 137

---

[5] Plaintiff erroneously states that the jury's award was reduced to $100,000.

(Pa. D&C 1999), a defamation case, the plaintiff presented evidence that defendants had wrongfully terminated him from a tenured position that he had held for nearly 20 years, sought to take over control of a prestigious project that the plaintiff had secured for defendants (along with its substantial funding), and circulated misleading information that reflected poorly upon plaintiff's professional abilities within their small and elite community. The court upheld a $2.5 million damages award for defamation, loss of reputation, and emotional damages, stating that "[t]he value placed on such harm by the jury may not be disturbed unless there is no support in the record." *Id.* at 142. The Seventh Circuit, however, requires courts to consider the rationality and reasonableness of jury awards in evaluating excessiveness, not merely whether the award finds any support in the record.

Contrary to the caselaw cited by Plaintiff, emotional damages awards within the Seventh Circuit typically fall within the range of $500 to $50,000 or more. *See Neal v. Honeywell, Inc.,* 995 F. Supp. 889, 894-95 (N.D. Ill. 1998) *aff'd* 191 F.3d 827 (7th Cir. 1999)(district court comparing cases and awards for emotional distress); *see also Webb v. City of Chicago,* 813 F.2d 824, 837 (7th Cir. 1987). In only a few cases within the Seventh Circuit have courts upheld jury verdicts of more than $50,000 for emotional damages. The Seventh Circuit typically requires

special circumstances to justify large awards for emotional distress.

An example of such special circumstances can be found in *United States EEOC v. AIC Sec. Investigations, Ltd.,* 55 F.3d 1276 (7th Cir. 1995). In *AIC Sec.*, a jury awarded a terminally ill patient, discharged from his job in violation of the Americans with Disabilities Act, $50,000 for emotional distress damages. The plaintiff presented evidence that he had defined himself by the work that he performed for the defendant, and, following his termination, he had to grapple with both his loss of identity and stature, as well as his concern for his grieving family's financial well-being. The Seventh Circuit agreed that the plaintiff had demonstrated that his "emotional burden was considerably greater than that suffered by the ordinary victim," and affirmed the $50,000 compensatory award. *Id.* at 1286 (noting, however, that "it may be that [the plaintiff] did not really deserve as much as $50,000, but that is not the question.")

The Seventh Circuit found that special circumstances were also demonstrated in *Neal v. Honeywell,* 191 F.3d 827 (7th Cir. 1999). The *Neal* plaintiff was a whistleblower, whose employer eventually forced her out of the company after she revealed her employer's wrongdoing. At trial, the plaintiff presented evidence that her coworkers had repeatedly threatened to harm the whistleblower, if they discovered her identity. Instead of

19

properly reprimanding the renegade employees, the employer suggested that the plaintiff take a paid leave of absence "for her own safety." *Id.* at 829. At approximately the same time, her employer substantially reduced her job responsibilities; the plaintiff subsequently resigned. In addition to other damages, the jury awarded the plaintiff $550,000 for her emotional distress, which the district court reduced to $200,000.

The Seventh Circuit rejected the defendant's contention that the court's award of $200,000 was still impermissibly excessive, finding that the threats of physical injury, coupled with her employer's refusal to protect her, rendered the plaintiff's injury "out of the ordinary." *Id.* at 832. The Court upheld the $200,000 award, because a "'rational connection between the award and the evidence'" had been established. *Id.* (quoting *EEOC v. AIC Security Investigation, Ltd.*, 55 F.3d 1276, 1285 (7th Cir. 1995)).

In comparing Plaintiff's injuries to those of other plaintiffs in roughly similar circumstances, the Court finds that each incident of harassment to which Plaintiff was exposed was not, in and of itself, so extreme or outrageous as to shock the conscience. Nor did Plaintiff's evidence of emotional distress[6]

---

[6] A plaintiff need not seek the assistance of a mental health professional or present expert medical testimony to receive a damages award for emotional distress. *See Kim v. Nash Finch Co.,* 123 F.3d 1046, 1065 (8th cir. 1997). The lack of such evidence is, however, relevant in assessing the propriety of

reveal that she required medical treatment or medication, or that the harassment interfered substantially with her ability to do her job; Plaintiff admitted that the District's conduct never caused her to miss even one day of work.

Notably, there were other stressors in Plaintiff's life at the time of the alleged harassment. It is also impossible to ignore -- let alone quantify -- the impact that the suicide of Plaintiff's fiancé in 1999 had on her emotional well-being. *See Merriweather,* 103 F.3d at 581 (reducing the plaintiff's emotional distress damages from $25,000 to $6,240 because the defendant's illegal conduct was "just one of several factors impacting Plaintiff's emotional state." ) Even Dr. Baker conceded that this traumatic event took an emotional toll upon Plaintiff.

Nevertheless, it is difficult to locate caselaw from this Circuit or others that documents a plaintiff who has endured such continuous harassment at the hands of so many different officers and superiors for such an extended period of time.[7] The Court further recognizes that there were three distinct types of emotional injury inflicted upon Plaintiff over a period of almost

---

the damages awarded. *See Avita,* 49 F.3d at 1227-29.

[7] One notable exception would be *Passantino v. Johnson & Johnson Consumer Products, Inc.,* 212 F.3d 493 (9th Cir. 2002), where the court upheld $1 million in emotional distress damages awarded to a plaintiff who had been subjected to institutional harassment for approximately six years before her termination from a lucrative position with defendant.

ten years: the emotional injury arising from the initial harassment at the hands of the officers in Area 2; the emotional injury arising from the District's failure to respond to her legitimate complaints; and the emotional injury arising from the retaliation she suffered within the District after she filed her charge with the EEOC. *See Neal,* 995 F. Supp. at 895, n. 8 ("The Court's $200,000 figure attempts to recognize there were really two separate and distinct aspects to Neal's compensatory damages -- one for the last four months at work and another for the twelve months thereafter.")

In addition, Officer Spina, like the plaintiff in *Neal v. Honeywell,* also feared retribution from her coworkers and superiors because of her complaints. Plaintiff testified that she was fearful that, because of her complaints, she could not be certain that she could rely upon her fellow officers. Plaintiff also described a frightening incident where a fellow officer failed to back her up in the field, having her tires slashed at work, and receiving several hang-up phone calls at her home from a phone number assigned to the Area 2 station. Given the importance of trust and comradery in law enforcement, the isolation and ostracization that Plaintiff endured could give rise to a very real fear that her safety could be in jeopardy.

Moreover, Plaintiff's damages were not limited to emotional distress. Plaintiff also argued and presented evidence at trial

regarding damage to her reputation[8]; damages that the District fails to discuss. Sgt. William Dineen testified that Chief Castans rejected his suggestion to appoint Plaintiff to an elite tactical unit, because Chief Castans believed that Plaintiff was a "beefer" and a "high maintenance officer." Officer Barbara Wishba testified that, in August of 2001, Chief Coleman – Chief Castans' replacement – was so angry upon learning that Plaintiff had made additional complaints that he stated, in front of at least three other officers, that "I was going to make her a detective. F— it, she's making it look like I'm not taking care of anything and going over my head to that goddamn Joanne Robinson without coming to me first." Chief Penny Harrington testified that, if Plaintiff ever left the District, she would find it extremely difficult, if not impossible, to find a new position in law enforcement, because of the controversy surrounding her complaints.

---

[8] Plaintiff notes that Defendant failed to object to the use of a general verdict form, which did not permit the jury to award separate damages for specific injuries. As such, Plaintiff asserts that one can only speculate as to the amount the jury intended to award to compensate Plaintiff for damage to her reputation, and the amount the jury intended to award to compensate Plaintiff for her emotional distress. Because Defendant failed to challenge as excessive the award as it pertained to the damage to reputation, Plaintiff argues, Defendant has waived its challenge to the entire award. Without commenting on the validity of this reasoning, the Court notes that waiver is a restriction on the parties, not the Court, and that the Court is free to review the reasonableness of the entire award sua sponte.

Despite Officer Spina's continuous suffering, the Court cannot uphold a $ 3 million verdict for a plaintiff who has never sought mental health treatment, whose own expert witness opined that she does not require such treatment, and who still retains her position with her employer. The Court concludes that a remittitur should be offered to Plaintiff. *Davis v. Consolidated Rail Co.,* 788 F.2d 1260, 1263 (7th Cir. 1986)(when a damages award is excessive, remittitur, not a new trial, is the appropriate remedy.) Given the circumstances presented in this case, and its similarity to the *Neal* case, the Court rules that Plaintiff must accept a total award of $300,000 in compensatory damages, or be given a new trial on the issue of damages alone. The Court finds that $200,000 clearly compensates Plaintiff for her emotional distress, and that $100,000 is adequate to compensate her for the damage to her reputation.

## B. The Comparability Standard is Not Unconstitutional.

In making this determination, the Court necessarily rejects Plaintiff's argument that the Seventh Circuit's application of a comparability standard when reviewing jury awards violates the Seventh Amendment and is, therefore, unconstitutional. The Seventh Amendment to the Constitution provides that:

> In suits at common law . . ., the right to trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

U.S. Const., Amdt. 7 (the "reexamination clause").

Plaintiff asserts that the only permissible limitations on the reexamination clause are those that existed at common law in 1791, when the Seventh Amendment was adopted. She argues that, because federal common law did not permit reviewing jury awards based upon comparability at the time the Seventh Amendment was adopted, any such review is not permitted presently and is contrary to the Seventh Amendment. In support of this assertion, Plaintiff relies heavily upon Justice Rehnquist's dissent in *Parklane Hoisery Co. v.* Shore, 439 U.S. 322, 345-46 (1979), advocating strict construction of the Seventh Amendment and the Constitution to prohibit the use of offensive collateral estoppel; a position rejected by the majority of the Justices.

Acceptance of Plaintiff's argument would require the Court to overlook the fact that the Supreme Court has historically recognized the right and duty of the trial court to examine verdicts and awards for reasonableness. Justice Scalia has reiterated that the Seventh Amendment permits trial courts to reexamine facts found by a jury, including the jury's assessment of damages, for reasonableness. *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 457 (1996) (Scalia dissenting.) Justice Scalia further explained that the "shock the conscience standard," which Plaintiff concedes may be permissibly relied upon by trial courts reviewing awards for excessiveness, is not substantially different than the New York State standard, which

required the trial court to review a jury award that "deviates materially from what would be reasonable compensation," at issue in *Gasperini*. *Id.* at 465 (noting that the majority found the New York State standard to be substantially distinct, but nonetheless constitutionally permissible.)

Not surprisingly, many of the Circuits – not just the Seventh Circuit – apply some form of comparability analysis when reviewing jury awards. *See* Colleen Murphy, *Judicial Assessment of Legal Remedies*, 94 Nw. Un. L. Rev. 153, 204 n. 197 (Fall 1999) (collecting cases). The Court finds that "[c]omparative review does not itself challenge the substantive standard by which the jury's award will be evaluated. Rather, only the evaluative technique changes – the possible excessiveness of a jury's award is evaluated with reference to other jury awards rather than to the trial court's view of appropriate relief." *Id.* at 191-92. Because the comparability standard is merely a tool used to assess the reasonableness of a jury award, and not an additional invasion into the jury's province, the Court rejects Plaintiff's constitutional challenge.

### C. Equity Does Not Compel Upholding Plaintiff's $3 Million Award.

In a final attempt to retain her clearly excessive $3 million award, Plaintiff asks the Court to exercise its equitable powers to uphold the jury's award. In this regard, Plaintiff notes that, under the Internal Revenue Service's regulations and

Seventh Circuit caselaw, Plaintiff's judgment and any award for attorney's fees will be taxable as income to Plaintiff. *See Kenseth v. Commissioner of Internal Revenue,* 259 F.3d 881 (7th Cir. 2001).[9] Plaintiff contends that, because Plaintiff's attorney's fees and costs will exceed $1 million, a reduction of the jury's award to $200,000, for example, would actually result in Plaintiff paying her entire award, plus $154,322 of her own money (money which she does not have) to the IRS in income taxes.

The Court is not unsympathetic to Plaintiff's plight. Plaintiff waged a courageous fight for what she believed was just, even though other female officers, who felt similarly victimized, lacked the fortitude to do so. However, the Court will not sneak through the back-door of equitable relief, what the Seventh Circuit, by means of its standards for reviewing excessive verdicts, prohibits in the first instance. In this regard, the Court notes that Plaintiff cites absolutely no caselaw authorizing the Court to exercise its equitable powers in the manner that Plaintiff suggests.

To be sure, the application of the current tax law, as Plaintiff interprets it, appears to produce an "anomalous, unjust result." *Hukkanen-Campbell v. Commissioner of Internal Revenue,*

---

[9] The Seventh Circuit upheld the U.S. Tax Court's ruling, in which the Tax Court stated that "Congress, not the Courts, is the final arbiter of how the tax burden is to be borne by taxpayers." *Kenseth v. Commission of Internal Revenue,* 114 T.C. 399, 415 (2000).

274 F.3d 1312, 1314 (10th Cir. 2001). But, as the Tenth Circuit succinctly stated, "[t]he perceived inequities of the [tax code] are simply not at issue here. Congress, not this Court, must correct any shortcomings in the [tax code's] application." *Id* (ruling on the applicability of the alternative minimum tax to attorney's fees paid pursuant to a contingent legal fee agreement.)

In the end, Plaintiff will benefit from the recovery of her legal fees; a substantial obligation that Plaintiff likely would have been personally responsible for satisfying in its entirety, absent Title VII and Section 1983's attorney's fees provisions. With little more than general legal principles and rhetoric on Plaintiff's side, however, the Court declines Plaintiff's invitation to venture down a slippery slope and wade into this legal morass under the guise of equitable relief.

### III. Mr. Nudell's Motion Should Be Refiled As a Motion For Summary Judgment.

Defendant Michael Nudell filed a Motion, pursuant to Rules 50(a) and 59 of the Federal Rules of Civil Procedure, but labeled it a Motion for a Dismissal With Prejudice. Mr. Nudell argues that Plaintiff has not sustained her burden of proving that the evidence against him is sufficient to go to a jury.

Given the unique procedural posture of this case[10], the
Court agrees with Plaintiff that neither Rule 50 or 59 permits
such a motion.  Rule 59 Motions are to be filed after the entry
of judgment.  Because a mistrial was declared with respect to
Plaintiff's claim against the Individual Defendants, including
Mr. Nudell, judgment has not been entered against him.  *See*
*Esneault v. Waterman S.S. Corp.,* 449 F.2d 1296, 1297 (5th cir.
1971)(noting that an order declaring a mistrial is interlocutory
and not appealable as a final judgment.) Rule 50(a) does not
assist Mr. Nudell either, because the Motion was filed after the
case was submitted to Jury B, and, importantly, not "during a
trial by jury."  Fed. R. Civ. P. 50(a)(2).

By seeking dismissal with prejudice, Mr. Nudell's Motion is,
in essence, a Motion for Dismissal pursuant to Rule 12(b)(6) of
the Federal Rules of Civil Procedure.  However, Mr. Nudell's
argument in favor of dismissal relies upon evidence beyond the
allegations contained in Plaintiff's Complaint.  Therefore, the
Motion must be treated as one for summary judgment under Rule 56
of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P.

---

[10] The case is not entirely unique.  The Tenth Circuit
issued an unpublished opinion in a substantially similar case –
at least from a procedural perspective.  *Mann v. Hutchinson*
*Public Schools,* No. 98-3307 & 98-3318, 1999 WL 1092594, at * 1-2
(10th Cir. Nov. 23, 1999) (noting that neither Rule 50 nor Rule
59 authorized the defendant's motion to dismiss after the
declaration of a mistrial but prior to the start of the retrial.)
The Court finds the *Mann* court's reasoning persuasive and relies
upon the court's rationale in analyzing Mr. Nudell's Motion.

12(b)(6). However, because Mr. Nudell's Motion fails to conform to the requirements of Rule 56, and because Plaintiff has not substantively addressed Mr. Nudell's challenge, the Court finds that it would be inappropriate to consider the Motion without first providing Plaintiff with an adequate opportunity to respond. *Jacobs v. City of Chicago*, 215 F.3d 758, 765 (7th Cir. 2000) (citing *Carter v. Stanton,* 405 U.S. 669, 671 (1972))(noting that, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the nonmoving party should be given an opportunity to respond before converting a motion to dismiss into a motion for summary judgment.) The Court denies Mr. Nudell's Motion for Dismissal with Prejudice, but grants him leave to file a Motion for Summary Judgment that fully conforms to Rule 56. The Court will afford Plaintiff an adequate opportunity to respond.

## CONCLUSION

Cynthia Spina dreamt of being a police officer since she was a child; she worked hard and sacrificed to realize that dream. By all accounts, Officer Spina is an excellent officer, which makes the District's conduct all the more astounding. Its willingness to sacrifice a good officer instead of addressing serious sexual harassment and internal grievance problems reveals an anachronistic attitude that has no place in today's law enforcement community.

Officer Spina presented overwhelming evidence at trial that the District permitted the harassment, abuse, and retaliation against her. Instead of working to resolve Officer Spina's complaints, the District attempted to thwart investigations into her charges. Although the District contends that this Court's ruling regarding sanctions prevented it from contesting that evidence at trial, the sanctions ruling was well grounded and well earned, and is not properly before the Court for reconsideration. Therefore, the Court rejects the District's Motion for a New Trial.

Nevertheless, the Court must conclude that the jury's award of $3 million for the emotional distress and loss of reputation that Officer Spina suffered is monstrously excessive, is not rationally supported by the evidence, and vastly exceeds awards made in similar cases. The Court finds that Remittitur is the appropriate remedy, and offers Plaintiff the option of accepting, within 21 days of this decision, a $300,000 award or a new trial on the issue of damages alone.

Finally, the Court must deny Mr. Nudell's Motion for Dismissal with Prejudice. Mr. Nudell's argument in support of his Motion clearly relies upon evidence outside of the allegations in Plaintiff's Complaint. Moreover, given the unique procedural posture of this case, the Court finds that Mr. Nudell's Motion is not proper under Rule 54, Rule 59 or Rule 12

of the Federal Rules of Civil Procedure.  Instead, the Court grants Mr. Nudell leave to file a Motion for Summary Judgment and will, accordingly, give Plaintiff a full and fair opportunity to respond to Mr. Nudell's arguments.

**IT IS HEREBY ORDERED** that Defendant's Motion for a New Trial be, and the same hereby is, **DENIED.**

**IT IS FURTHER ORDERED** that the District's Motion for Remittitur be, and the same hereby is, **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Nudell's Motion for Dismissal With Prejudice is **DENIED.**  Defendant Nudell is given leave to file a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

Dated: May 31, 2002      ENTER:


ARLANDER KEYS
United States Magistrate Judge