# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 1393 | **DATE** | 7/30/2002 |
| **CASE TITLE** | Cynthia Spina vs. Forest Preserve District of Cook County | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Plaintiff's Fee Petition [#168] is granted in part and denied in part. Plaintiff is awarded $854,779.17 in fees and $94,982.09 in costs. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 3 1 2002 | |
| | Notified counsel by telephone. | | date docketed | **193** |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 7/30/2002 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| | FT/ *secy* | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 02 JUL 30 PM 2: 23 Date/time received in central Clerk's Office | FT/ mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

**JUL 3 1 2002**

CYNTHIA C. SPINA,                         )
                                          )
            Plaintiff,                    )
                                          )
        v.                                )    Case No. 98-C-1393
                                          )
FOREST PRESERVE DISTRICT OF COOK          )    Magistrate Judge
COUNTY, JOHN ZIELINSKI,                   )    Arlander Keys
JOHN TINETTI, CLARENCE CALABRESE,         )
MICHAEL NUDELL, HOWARD JONES,             )
and STEVEN CASTANS,                       )
                                          )
            Defendants,                   )

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Fee Petition[1]. For the
reasons set forth below, the Petition is granted in part and denied
in part. Plaintiff is awarded a total of $854,779.17 in fees, and
$ 94,982.09 in costs.

### Procedural Background

Prior to filing her Fee Petition with this Court, Plaintiff
filed with the District's attorney, Thomas Marzewski, materials
identifying the hours expended, rates charged, and expenses
incurred, pursuant to Local Rule 54.3(d)(1-4).[2] Approximately two

---

[1]  There is no dispute that the Forest Preserve District of
Cook County (the "District" or "Defendant"), as opposed to any of
the Individual Officers, is liable for paying all of Ms.
McFadden's fees that the Court deems reasonable.

[2]Notably, both Mr. Marzewski and Mr. McCormick, the
District's General Counsel, indicated that, at least as of

weeks later, on February 14, 2002, Defendant provided Plaintiff with materials identifying its attorneys' fees and expenses. Less than one month later, the District announced that it had hired new counsel to represent it during the post-trial proceedings. On March 4, 2002, Martin Greene, Kevin Lee, and Karen Tinglin ("new counsel") filed their appearances on behalf of the District. New counsel filed objections to Plaintiff's Fee Petition two days later.

At Plaintiff's request, the parties met on March 14, 2002, to discuss Defendant's objections to the Fee Petition. Plaintiff provided new counsel with material that further illuminated the entries in the Fee Petition, as well as her preliminary analysis of Defendant's objections. New counsel conceded that they were not familiar with basic information essential to comprehending the Fee Petition, such as the history of discovery, several of the motions filed in the case, the names of the Individual Defendants, and the role of certain non-party witnesses.

New counsel agreed to revise its objections, but failed to submit a document enabling Plaintiff to file a Joint Statement called for by Local Rule 54.3(e). Plaintiff filed a Memorandum in Support of her Fee Petition on March 27, 2002. Defendant filed its

---

November 30, 2001 they had no reason to think that Ms. McFadden had not been reasonable in her time expenditures for which she intended to bill the District. See Transcript of November 30, 2001 Hearing on Motions before the Honorable Magistrate Judge Arlander Keys at pp. 27-28.

Response to the Memorandum almost two months later, on May 23, 2002.[3] Plaintiff undertook the laborious and unenviable task of assimilating Defendant's objections into a chart of time entries, objections, and replies, submitting her Reply brief on June 12, 2002.

## Discussion

As a prevailing party under both Title VII and Section 1983, Plaintiff is entitled to reasonable attorneys fees and expenses. 42 U.S.C. § 2000e-5(k)(2001); 42 U.S.C. § 1988 (2001). Plaintiff bears the burden of proving to this Court the reasonableness of both the hours worked and the rate claimed. *Spegon v. The Catholic Bishop of Chicago,* 175 F.3d 544, 550 (7th Cir. 1999).

In *Hensley v. Eckerhart,* the United States Supreme Court set forth the standard for courts to employ when reviewing fee petitions. 461 U.S. 424, 433-35 (1983). The Court explained that the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly wage." *Id.* at 433. (labeling this equation the lodestar method.) The Court will examine each component of the lodestar method in turn.

---

[3]There is no indication as to whether Defendant's prior counsel reviewed the Memorandum in Support of the Fee Petition or Defendant's Response to that Memorandum.

A.  Ms. McFadden's Reasonable Rate

An attorney's reasonable rate is the rate the attorney commands in the market, or the market rate. *People Who Care v. Rockford Board of Education School Dist. No. 205,* 90 F.3d 1307, 1310 (7th Cir. 1996). (the burden is on fee applicant to establish market rate.) "The attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate." *Id.* Additional evidence of market rate includes fees awarded to the attorney in similar cases, or "affidavits from similarly experienced attorneys attesting to the rates they charge paying clients for similar work." *Spegon v. The Catholic Bishop of Chicago*, 175 F.3d 544, 556 (7th Cir. 1999). "Once an attorney provides evidence of his billing rate, the burden is upon the defendant to *present evidence* establishing 'a good reason why a lower rate is essential.'" *People Who Care v. Rockford Board of Education School Dist. No. 205,* 90 F.3d 1307,1313 (7th Cir. 1996) (emphasis added) (quoting *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1151 (7th Cir. 1993)).

After determining the appropriate rate, the Court may adjust the award in light of the following twelve factors:

> 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the

4

undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases.

*Hardison v. Galaxy Recovery Systems, Inc.,* NO. 00 C 2280, 2001 WL 1555197, at *2 (N.D. Ill. Dec. 4, 2001) (citing *Hensley*, 461 U.S. at 429-30.)

Plaintiff's counsel, Monica McFadden, requests approval of a rate of $325/hour, and $350/hour for court time. Ms. McFadden's paralegal, Lucy Vazquez, seeks a rate of $75/hour. In support of these rates, Plaintiff has provided the Court with evidence of Ms. McFadden's actual billing rate to clients, fees awarded to Ms. McFadden by other courts, affidavits from attorneys attesting to their hourly billing rates, and Ms. Vazquez's affidavit in support of her hourly billing rate.

Ms. McFadden concedes that she has not billed at these rates since taking this case in 1997, but argues that she has demonstrated that her rate since at least 1996 has been $300/hour, and that the Court should permit her to bill for all time at her current rate to account for inflation.

Defendant complains that Ms. McFadden's requested rate is too high, contending that Ms. McFadden has not satisfied her burden of demonstrating that the requested rate is appropriate. Defendant argues that the attorney affidavits submitted by Plaintiff actually demonstrate that a lower hourly rate is appropriate, contending that these attorneys – Ms. Candace Gorman, Ms. Robin Potter, and

5

Mr. Bruce Pfaff[4] – are more experienced, and entitled to a higher hourly rate than Ms. McFadden.

Defendant presents no evidence as to what constitutes a reasonable rate for an attorney with Ms. McFadden's experience and expertise, stating only that Mr. DeBofsky's fee range (which Defendant alleges is between $200 and $300/hour) is more appropriate. Similarly, Defendant fails to address Ms. McFadden's request to be compensated at the rate of $325 or $350/hour for all reasonable hours billed.

The Court finds that Plaintiff has presented sufficient evidence to demonstrate that her current rate is, and should be, $325/hour, and $350/hour for court time. In support of Ms. McFadden's current market rate, Plaintiff has presented evidence of fees awarded to Ms. McFadden in other cases, substantiating her billing rate claim. In addition to her own affidavit, Ms. McFadden has submitted the affidavits of three well-known civil rights attorneys, each of whom avow that Ms. McFadden's rates are supported by the market. The affiants attest to Ms. McFadden's expertise, admit that she is one of the few attorneys in Chicago to accept complex and even undesirable civil rights matters on a contingency basis, and claim that Ms. McFadden's rates are "modest" given her vast experience, knowledge, and abilities.

---

[4] Defendant does not charge that Mr. Pfaff's experience/expertise entitles him to a higher hourly rate than Ms. McFadden.

This evidence is sufficient to shift the burden to Defendant to present evidence establishing why a lower rate is essential. *See Pressley v. Haeger,* 977 F.2d 295, 298 (7th Cir. 1992) (court should have accepted plaintiff's evidence of market rate, in the form of attorney affidavits, absent competing evidence submitted by defendants.) In response, Defendant has produced no evidence whatsoever that Ms. McFadden's market rate is less, arguing only that Ms. McFadden has practiced law for fewer years than the affiants.

Admittedly, Ms. McFadden has logged fewer years as an attorney than these three colleagues, a factor that has influenced some courts to reduce fees - none of these cases were cited by Defendant, however. Nevertheless, the Court is convinced that Ms. McFadden's representation in this matter demonstrates that her legal representation belongs in the same league as Ms. Potter, Ms. Gorman, and Mr. Pfaff. Moreover, Ms. McFadden enjoyed a long career in electoral politics and as a government affairs representative prior to attending law school, experience that is relevant to and substantially enhances her legal experience. Finally, application of the *Hensley* factors demonstrates that Ms. McFadden is entitled to her requested rate.

The parties have appeared before the Court in this matter many times over the past several years. The Court's initial impression of Plaintiff's case was underwhelming; the Court was doubtful that

7

Plaintiff would survive a summary judgment motion, and was doubtful that Plaintiff could persuade a jury that she was entitled to a substantial award. But Plaintiff and Ms. McFadden slowly built a solid case against the District, ultimately persuading a jury that the District should pay Plaintiff $3 million in compensatory damages[5].

Ms. McFadden's road to success was long and arduous. The District's well-documented attempts to frustrate Plaintiff's right to discovery required Ms. McFadden to remain hyper-vigilant in her quest to uncover relevant documents and information, and to duplicate her deposition efforts after hidden materials came to light. Despite the distractions, Ms. McFadden presented well-reasoned (and usually winning) arguments in support of her client's position.

In addition to upping the degree of difficulty for Plaintiff during discovery, Defendant's high jinks concealed, until the eve of trial, hard evidence of a conflict of interest between the District and the Individual Defendants. This conflict was particularly troubling because most of these Defendants were represented by the same attorney. More importantly, at least from

---

[5] The Court subsequently reduced the award, offering Plaintiff a remittitur of $300,000 or a new trial on damages only. While the verdict was excessive, it is indicative of Ms. McFadden's ability to take this case, against seemingly insurmountable odds--including flagrant discovery abuses by the District--and to prevail against very formidable opponents.

Plaintiff's perspective, Ms. McFadden had to abandon her trial preparation in favor of filing and/or responding to emergency motions to sever, for sanctions, and to extend time. The Court resolved the conflicts issue by ordering that the Defendants' trials proceed simultaneously, as scheduled, before two different juries. This novel solution raised a whole host of trial strategy issues, and required Ms. McFadden to revamp her entire presentation on the eve of trial.

Despite these substantial roadblocks, Ms. McFadden presented a persuasive, well-organized, and passionate case that resonated with the juries. Ms. McFadden achieved what the Court believes is unprecedented success in this District.

The Court is also mindful that, in civil rights and employment cases, plaintiffs typically rely on their attorneys for guidance beyond the allegations laid out in the complaint. This case is no exception; it is apparent that Ms. McFadden served as counselor to Plaintiff in the truest sense of the word. The Court does not doubt Ms. McFadden's assertion that this case, which has been plodding along for more than four years, monopolized much of her time, precluding her from representing other potential clients.

In short, the Court finds that Ms. McFadden's representation in this matter has been of the highest caliber. Her zealous representation is all the more impressive in light of the unique challenges presented by this case. The *Hensley* factors clearly

remove any ambiguity that Ms. McFadden's current rate should be set at $325/hour, and $350/hour for court time.

This is not the end of the Court's rate inquiry, however, because Ms. McFadden insists that inflation justifies paying her 1997-2000 hours at her 2002 rates. While the Court acknowledges that it may set a higher rate for prior billing years to account for inflation, it must do so based upon a rational multiplier. *See Ohio-Sealy Mattress Manufacturing Co. v. Sealy* Inc. 776 F.2d 646, 663-64 (7th Cir. 1985). Nevertheless, the Court finds that Ms. McFadden should be compensated at her requested rate for time incurred since the inception of this case for several reasons. First, using the increased rate for 1997-2000 will not result in a windfall to Ms. McFadden; the increased rate is approximately 8% higher for a period of three years. *See Id.* at 663 ("To correct for inflation, using current rather than historical hourly rates might prove adequate if the litigation lasted only a few years.") Next, Ms. McFadden accepted the case on a contingency basis, and is entitled to be rewarded for assuming the risk of nonpayment. *See Blum v. Stenson,* 104 S.Ct. 1541, 1551 (1984)(Brennan, J., concurring) (this bonus induces civil rights attorneys to take meritorious cases that might not otherwise be heard.) Finally, application of the *Hensley* factors, which the Court discussed above, warrants such an upward adjustment.

10

Therefore, the lodestar formula will incorporate Ms. McFadden's requested rate of $325/hour, and $350/hour for court time, for the entirety of her representation in this case.

The Court further finds that Ms. Vazquez' requested rate is reasonable, *see, e.g., Hardison,* 2001 WL 1555197, at *2 (upholding $100/hour award as reasonable), and notes that Defendants have submitted no evidence in support of their claim that Ms. Vasquez' requested rate of $75/hour is excessive, other than its bald assertion that it pays its own paralegals less. *See Not on the Guest List Coalition v. City of Chicago,* No. 96 C 4622, 1999 WL 350655, at *2 (N.D. Ill. May 19, 1999) ("$50 is obviously too low for law clerks and paralegals," instead awarding $90/hour.) The Court similarly finds that Ms. Vasquez should be paid at her requested rates.

B. Disputed Attorney Time

The Court will award only those fees that are properly documented and reasonable. A court may find that fees are unreasonable if the attorney failed to achieve a successful result, was inefficient and duplicitous, or inadequately documented her time. *People Who Care,* 90 F.3d at 1314. The Court may not, however, "'eyeball' the fee request and 'cut it down by an arbitrary percentage because it seemed excessive to the court.'" *Id.* (quoting *Spellan v. Bd. of Educ. for Dist. 111,* 59 F.3d 642, 647 (7th Cir. 1995)).

11

Where the documentation of hours is inadequate, or the description of services is vague, the Court may reduce or deny the award accordingly. *Webb v. James*, 967 F. Supp. 320, 323 (N.D. Ill. 1997). The party opposing a fee petition has a similar obligation; "[c]ounsel who opposed the fees have a similar responsibility to state objections with particularity and clarity." *Ohio-Sealy Mattress,* 776 F.2d at 664. "If a defendant fails to specifically object to the requested attorneys' fees, the Court will generally award the requested fees." *Northwestern Nat.'l Life Ins. Co. of Milwaukee Wis. v. Lutz,* 933 F. Supp. 730, 732 (C.D. Ill. 1996).

A few comments about the Court's general impression of the parties' submissions are in order. It is apparent that Ms. McFadden was as careful in contemporaneously documenting her time, as she was in subsequently clarifying any ambiguities. When confronted with Defendant's objections, Ms. McFadden provided detailed explanations as to why it was necessary to devote substantial time to certain tasks, and why what might otherwise appear to be duplicative time was, in fact, justified. *See, e.g.,* Defendant's objection to Ms. McFadden's 1/14/00 entry and her subsequent reply (explaining why drafting the court-ordered response was time intensive and not duplicative.)

In response to Defendant's repeated objection that the time Ms. McFadden devoted to certain tasks was excessive, Ms. McFadden

frequently demonstrated that Defendant had paid its own counsel for billing comparable time (and sometimes more) on comparable tasks. *See, e.g.,* Defendant's objections to Ms. McFadden's 10/27, 28, and 29/01 entries and Ms. McFadden's reply (noting that, while Ms. McFadden billed 31 hours for drafting a detailed 25 page brief, defense counsel billed 49 hours for drafting its 18 page motion); *and* Defendant's objection to Ms. McFadden's 11/25/01 entry and Ms. McFadden's reply (noting that while Ms. McFadden billed 4 hours for "polishing" Ms. Robinson's direct testimony, defense counsel spent a total of 11.5 hours preparing for Ms. Robinson's trial presentation.)[6]  While Ms. McFadden went to great lengths to highlight comparable time for comparable tasks, scouring through her own and defense counsel's fee submissions, Defendant maintained its objections without addressing Ms. McFadden's explanations, or attempting to reconcile its objections with Ms. McFadden's findings.

In contrast to Ms. McFadden's well organized and highly detailed submissions, Defendant's objections are vague and boilerplate. Defendant simply objects to many of Plaintiff's well described entries as "vague" or "excessive." These objections are inadequate, particularly in light of Ms. McFadden's repeated

---

[6]  While it is not impossible that Ms. McFadden is comparing apples to oranges, the Court's review of the record does not support such a conclusion and Defendant has utterly failed to challenge Ms. McFadden's representations as incomplete or otherwise inaccurate.

demonstration that such objections were often internally or externally inconsistent. For example, Defendant accepts some of Ms. McFadden's entries, while rejecting nearly identical entries as being too vague to warrant reimbursement. (compare Defendant's objection to 8/18 and 19/00 entries for "Penny Harrington" while withdrawing its objection to 9/08/00 objection to "Dr. Baker.")[7] Similarly, Defendant objects to language in some of Plaintiff's entries as vague, even though it paid defense counsel for similar entries (compare Ms. McFadden's 10/25/01 entry for "trial brief memo research - research issues of T-7 sexual harassment, retaliation" with defense counsel's 8/23/01 entry for "Research of legal issues re briefing Title VII retaliation cases.")

It would also seem that Defendant's objections fail to view Ms. McFadden's entries in the context of the underlying litigation; new counsel was apparently unaware of the circumstances surrounding a number of entries. *See, e.g.*, Defendant's objections to Ms. McFadden's 07/06-07/01 entries, and Ms. McFadden's reply (objections to travel time maintained despite Ms. McFadden's explanation regarding necessity.) And, as has been discussed *ad*

---

[7]     The Seventh Circuit has explained that entries such as "discussion with Diane, Aviva" and "notes of meeting" are not vague when taken in context. *Berberena v. Coler,* 753 F.2d 629, 634 (7th Cir. 1985). Similarly, the Court finds that Ms. McFadden's entries relating to Dr. Baker and Penny Harrington, when viewed in conjunction with her subsequent supplementations, are entirely appropriate.

*nauseam,* Defendant's conduct necessarily resulted in substantially increased attorney billing time. *See, e.g.,* Defendant's objection to Ms. McFadden's 08/10/01 entry for time billed preparing for Chief Jones' second deposition, and Ms. McFadden's reply.

Defendant also attempts to hold Ms. McFadden to the same number of hours (and in some cases fewer) expended by defense counsel in preparing for a deposition, even when Ms. McFadden was responsible for taking (as opposed to defending) the deposition. *Shaw v. AAA Engineering & Drafting, Inc.,* 213 F.3d 538, 542-43 (10th Cir. 2000) (stating that an "opponent's time is not an immutable yardstick of reasonableness.") The Court finds it entirely reasonable that Ms. McFadden would expend more hours prosecuting this case than defense counsel spent defending it; particularly in light of Ms. McFadden's level of representation and the outcome she achieved in this case. Moreover, Defendant's attempts to limit Ms. McFadden's reasonable hours to those expended by defense counsel ignores the additional hours she was required to bill in response to Defendants' discovery tactics. The Court further notes that, in many instances, Ms. McFadden's billable hours were comparable to defense counsel's for similar tasks.

Defendant also challenges the amount of time Ms. McFadden spent preparing various reply briefs as excessive. *See, e.g.,* Defendant's objections to Ms. McFadden's entries for 4/27-30/01, preparing reply to Motion to Compel, and 6/15, 16, and 18/01

preparing reply to 2d Motion for Sanctions. Although one might expect a litigant to spend significantly less time preparing a reply brief than an opening brief, the Court has reviewed the challenged reply briefs and agrees that they are detailed, and persuasive. As such, the Court will not reduce Plaintiff's hours for preparing these reply briefs.

Similarly, while block billing 15 hours a day typically might be deemed too vague and excessive to warrant payment, such entries are entirely appropriate when devoted to trial preparation just before and during trial. *See, e.g.,* Defendant's objection to Ms. McFadden's 11/26-28/01 entries and Ms. McFadden's reply. Finally, Defendant's objections to the time Ms. McFadden devoted to the numerous post-trial motions are so lacking in detail and merit that the Court rejects them without explication.

In general, the Court finds Ms. McFadden's entries to be well organized, and, when viewed with her subsequent supplementation, precise enough to enable the Court to review the entries for reasonableness. The Court also notes that Plaintiff achieved a victory in this case, despite a number of roadblocks placed in her path. She is entitled to her fees, and the Court will not arbitrarily undermine her billing records.

Nevertheless, upon careful review of the billing records in this case, the Court finds that the following billing entries warrant a reduction:

*5/04/99:  Ms. McFadden billed one hour for attempting to reach defense counsel by phone.  While the Court does not doubt Ms. McFadden's explanation that she tried calling defense counsel six times that day, and that she regularly bills .10 (a billing increment minimum) for attempted calls, the Court finds that $325 dollars for dialing defense counsel's number six times is excessive and unreasonable.  The Court reduces this time by .50, to .10.

*3/24/01, 3/30/01, and 3/31/01: Ms. McFadden billed 20 hours for consulting with Chief Harrington about her report.  The Court finds that, while the report was important, 20 hours for consulting with Chief Harrington about the report - which Ms. McFadden reviewed in only 4 hours on 4/02/01 - is excessive, and the Court reduces this time by 5 hours, to 15 hours.

*8/11/01 and 8/12/01: Ms. McFadden billed 24 hours for reviewing the depositions of 5 female officers in preparation for Chief Castan's and Joanne Robinson's depositions.  In light of the other substantial time entries that Ms. McFadden has submitted in connection with the underlying depositions and the preparation for these depositions, the Court finds this time to be excessive and reduces the time by 8 hours, to 16 hours.

In conclusion, the Court reduces Plaintiff's compensable hours by 13 hours, 50 minutes of non-court time.  Therefore, the Court awards Plaintiff **$810,304.17 in attorney's fees,** $4,495.83 less than requested.

17

## C. Disputed Paralegal Time

Defendant lodged objections to 18 groups of paralegal entries. In general, the Court is unsympathetic to Defendant's complaints that Ms. Vazquez spent excessive amounts of time reviewing and organizing documents; Defendant's failure to produce these documents in a timely and organized manner required the additional time. Defendant's objections to Ms. Vazquez' trial time as unnecessarily duplicative of Ms. McFadden's time fails to account for the fact that Ms. Vazquez served, essentially, as second chair at trial, and that Defendant willingly paid for two defense attorneys[8] to be present throughout the trial. Similarly, the fact that Ms. Vazquez spent more time preparing trial exhibits than her counterparts at defense counsel's firm ignores the fact that Defendants largely relied on Plaintiff's exhibits at trial.

The Court does agree, however, that Defendant's objection number 4 (8/10/01) and number 5 (8/30/01 and 9/04/01) are appropriate. The Court finds that five hours for setting eight depositions is excessive, and is likely the product of minimum billing entries (ie., one(1) two minute phone call is billed at the minimum billing entry of ten minutes). The Court reduces the reasonable time incurred by Ms. Vazquez on 8/10/01 by one half, reducing the reasonable time to 2.5 hours.

---

[8] There were actually three defense attorneys present at trial -- the District's two attorneys and Mr. DeBofsky.

Similarly, the Court finds that 16 hours for reorganizing Plaintiff's trial preparation after Defendant requested an extension is excessive. The Court reduces Ms. Vazquez' entries on 8/30/01 and 9/04/01 by three hours for each day, for a total reduction of six hours.

The Court awards Plaintiff **$ 44,475.00 in paralegal fees,** $622.50 (or 8 ½ hours) less than the requested amount.

D.  Disputed Costs

Finally, Defendant attacks several categories of costs as nonrecoverable "ordinary office overhead," including: 1) Lexis fees; 2) Federal Express charges; 3) copies; 4) postage; and 5) fees that pertain to Amazon.com. Plaintiff counters that these costs are properly recoverable as part of Ms. McFadden's reasonable attorney's fees. With regard to the Federal Express charges, copying fees, and postage, the Court agrees with Plaintiff. The Seventh Circuit has clarified that costs such as those associated with "postage, long-distance calls, xeroxing, travel, paralegal, and expert witnesses" are recoverable. *Heiar v. Crawford County,* 746 F.2d 1190, 1203 (7th Cir. 1984); *see also, Burda v. M. Ecker Co.,* 2 F.3d 769, 778 (7th Cir. 1993) (amounts spent on filing fees, photocopying, postage, telephone and delivery charges, and computerized legal research are typically recoverable by a prevailing party).

While Defendant is correct that the Lexis charges are not recoverable as costs, they are recoverable as attorney's fees. *Haroco v. American Nat.'l Bank & Trust of Chicago,* 38 F.3d 1429, 1440-41 (7th Cir. 1994). In *Haroco,* the Seventh Circuit explained that "[t]he added cost of computerized research is normally matched with a corresponding reduction in the amount of time an attorney must spend researching. Therefore, we see no difference between a situation where an attorney researches manually and bills only the time spent and a situation where the attorney does the research on a computer and bills for both the time and the computer fee." *Id.* Because Plaintiff is entitled to her reasonable attorney's fees and costs, the distinction is largely irrelevant from Plaintiff's perspective, and she is entitled to recover the entire sum. *Id.; see also Burda,* 2 F.3d at 778 (computerized legal research fees are recoverable).

With regard to the Amazon.com charges, Plaintiff contends that these charges reflect recommended reading, purchased on the recommendation of Plaintiff's expert witness, to assist with preparing the case and assessing Plaintiff's damages. Defendant offers no argument as to why these charges are not recoverable, stating only that the entries are vague, excessive, unnecessary, and not pertinent to the litigation. Absent any real response to Plaintiff's explanation of why the purchases were not excessive,

and were necessary and pertinent to the litigation, the Court overrules Defendant's objection.

Next, Defendant objects to the entries of 6/18/01 for $658.50 for United Airlines, and for 7/06/01 for $677.52 spent at the Inn at Morro Bay on the basis that the expenses are "excessively luxurious." Plaintiff offered a very credible explanation as to how and why she incurred the expenses (to attend the deposition of Plaintiff's experts, which Defendant had scheduled in California for Monday and the following Friday of the same week), to which Defendant does not respond. The Court finds that the expenses are reasonable and recoverable.

Finally, Defendant objects to entries relating to Zagnoli, McEvoy and Foley, Ltd., stating only that the bill is excessive and vague. Plaintiff explains that these charges were incurred in developing and producing trial strategy material and demonstrative evidence. The Court agrees that the expenses are properly reimbursable. *Falcon v. City of Chicago,* No. 98 C 4028, 2000 WL 1231403, at *2-3 (N.D. Ill. Aug. 28, 2000).

Therefore, the Court awards Plaintiff **$94,982.09 in expenses.**

E. Upward Adjustment to Lodestar

Finally, Ms. McFadden requests an upward adjustment to the lodestar sufficient to enable Plaintiff to satisfy her tax burden, solely for the attorney's fee award. Ms. McFadden concedes that, in ruling on the Motion for Remittitur, this Court has already

refused to shift Plaintiff's tax burden to the District under the guise of equitable relief. Undeterred, Ms. McFadden argues that the Supreme Court has determined that courts have the power to adjust the lodestar amount, *Hensley v. Eckerhart,* 461 U.S. 424 (1983), and that this Court should exercise that power to enhance Ms. McFadden's fees, strictly to enable Plaintiff to satisfy the impending tax judgment.

Ms. McFadden does not seriously argue that this is the type of enhancement contemplated by the *Hensley* court. Moreover, the Court's May 31, 2002 Opinion makes clear that it was not Plaintiff's inability to cite authorizing caselaw that precipitated the Court's refusal to exercise its equitable powers in the manner suggested by Plaintiff. To the contrary, the Court rejected Plaintiff's suggestion because doing otherwise would require this Court to ignore Seventh Circuit precedent and trespass on Congress' authority[9]. This Court will not ignore present law by having Defendant subsidize what, at least currently, is Plaintiff's burden.

## Conclusion

Plaintiff prevailed at trial, demonstrating that she was the victim of discrimination, harassment, and retaliation at the hands

---

[9] As Ms. McFadden correctly notes, legislation is currently before Congress to eliminate the situation where civil rights plaintiffs are personally liable for full taxes on attorney fee awards.

of the District.  As a prevailing party, Plaintiff is entitled to reasonable attorney's fees.

The Court finds that Plaintiff's Fee Petition is largely reasonable.  Ms. McFadden's requested fees reflect market value, and she has substantiated most of the hours submitted as reasonable and necessary.

**IT IS THEREFORE ORDERED** that Plaintiff's Fee Petition be, and the same hereby is, **GRANTED IN PART AND DENIED IN PART.**

Plaintiff is awarded $854,779.17 in attorney and paralegal fees and $ 94,982.09 in costs, for a total of $949,761.26[10].

Dated:  July 30, 2002          E N T E R:

ARLANDER KEYS
United States Magistrate Judge

---

[10]  The present award compensates Plaintiff for all fees and expenses incurred in her suits against both the District and the Individual Defendants from 8/4/97 through 1/26/02.