# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 1393 | **DATE** | 7/30/2002 |
| **CASE TITLE** | Cynthia Spina vs. Forest Preserve District of Cook County | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Plaintiff's Motion for a permanent injunction [#0-1] is granted in part and denied in part. AK

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 3 1 2002 | 184 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 02 JUL 30 PM 2: 23 | 7/30/2002 date mailed notice | |
| | FT/alcy courtroom deputy's initials | Date/time received in central Clerk's Office | FT mailing deputy initials | |


DOCKETED
JUL 3 1 2002

CYNTHIA C. SPINA,

    Plaintiff,

v.

FOREST PRESERVE DISTRICT OF COOK
COUNTY, JOHN ZIELINSKI,
JOHN TINETTI, CLARENCE CALABRESE,
MICHAEL NUDELL, HOWARD JONES,
and STEVEN CASTANS,

    Defendants.

Case No. 98-C-1393

Magistrate Judge
Arlander Keys

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Plaintiff's Motion for a Permanent Injunction. For the reasons set forth below, the Motion is granted in part and denied in part.

### Relevant Factual Background

On March 27, 1997, Plaintiff, Cynthia Spina, filed charges of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant Forest Preserve District OF Cook County (the "District") and six of its individual law enforcement officers (the "Individual Officers"). Pursuant to notification by the EEOC of her right to sue on December 18, 1997, Plaintiff timely filed a lawsuit in the District Court, alleging various acts of discrimination and harassment against Plaintiff

184

because of her gender. These allegations were against the District and the Individual Officers. The District and all but one of the Individual Officers were represented by the same counsel.

On November 21, 2001, the Court issued an Order sanctioning the District for its serious discovery abuses and its flagrant disregard of the Federal Rules of Civil Procedure and the authority of this Court. Pursuant to that Order, the District was barred from denying that: 1) certain officers sexually harassed Plaintiff; 2) all of the Individual Officers were acting under color of state law and within the scope of their employment; 3) Plaintiff's supervisors failed to properly respond to her complaints; 4) Plaintiff was subjected to the harassment because of her gender; and 5) the Chief of Police for the District was a policymaker. The Order further prohibited the District from introducing at trial any evidence, witnesses, or documents not properly disclosed prior to the close of discovery.

Approximately one week before the trial was scheduled to begin, Officer Michael Nudell filed an Emergency Motion to sever his trial from the District's trial. Officer Nudell persuasively argued that he would suffer extreme prejudice if his trial was not severed from the District's, because the District had previously taken the position before a state court that Officer Nudell had, in fact, sexually harassed Plaintiff, and the District's discovery abuses prevented it from distancing itself from those represen-

2

tations at trial. The District's failure to fully disclose the extent of its prior admissions and representations, or to otherwise notify the Court of its obvious conflict of interest with the Individual Officers in a timely manner had created yet another conundrum. The Court resolved the dilemma by ordering the parties to proceed to trial as scheduled, explaining that Plaintiff's case against the District and the Individual Officers would be heard simultaneously, by two separate juries.

At the close of the evidence, the Court explained to the juries that they would hear instructions and closing arguments as they pertained to either the District or the Individual Officers. The Court directed a verdict for Plaintiff against the District on her discrimination and retaliation claims under Title VII of the Civil Rights Act, and on her Section 1983 discrimination and retaliation claims. The Court then instructed the jury assigned to the District--outside the presence of the other jury-- that the Court had already determined that the District had committed the offenses against Plaintiff that were alleged, and that the jury's sole function was to determine whether such acts had proximately caused injuries to Plaintiff and, if so, the amount of damages to award to Plaintiff. The jury found in favor of Plaintiff, awarding her $3 million in non-economic damages.

Subsequently, Plaintiff filed the instant Motion for Permanent Injunction against the District. The District requested an

evidentiary hearing. However, the Court assured the parties that it would consider only the evidence presented at trial in its decision to grant or deny the Motion, and that any allegations regarding incidents that occurred after the trial would not be considered. With that understanding, both parties agreed that an evidentiary hearing was unnecessary.

### Discussion

Title VII authorizes courts to issue permanent injunctions to prevent those who have intentionally violated that Act from continuing to do so in the future. 42 U.S. C. 2000e-5(g) (West 2002). Section 706(g) of Title VII provides:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . or any other equitable relief as the court deems appropriate.

See also, *Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194, 1201-02 (7th Cir. 1971) (noting that federal courts have "plenary powers to fashion affirmative relief eradicating present discrimination.")

As a general rule, a plaintiff subjected to employment discrimination is entitled to an injunction against future harassment, unless the employer demonstrates that it is unlikely to repeat the conduct in the future. See *EEOC v. Ilona of Hungary,*

4

*Inc.*, 108 F.3d 1569, 1578 (7th Cir. 1997). A permanent injunction, which is tailored to address the type of discrimination proved by the plaintiff, is appropriate even if there is no evidence of a practice or pattern of discrimination. *Id.* The Seventh Circuit has stated that injunctive relief is particularly warranted where the individuals responsible for the underlying discrimination remain the defendant's decisionmakers. *Id.* at 1579.

The evidence presented at trial clearly established a pattern and practice of discrimination and harassment at the District. Numerous female officers testified at trial or in depositions about sexually offensive and discriminatory conditions at the District. These officers claimed that an old-boy mentality was pervasive at the District, and described a hierarchy that was openly hostile to the slow introduction of female officers into a male-dominated workforce. Defendant's own human-relations manager, Ms. Joanne Robinson, testified at trial that the District had no mechanism in place for investigating and remedying complaints of sexual harassment and discrimination prior to 1997. Plaintiff's expert police practices witness, Chief Penny Harrington, opined that the harassment and retaliation that Plaintiff endured revealed "one of the worst examples of harassment and discrimination of women officers that I have seen since the days before the EEOC rulings on sexual harassment were issued." (Harrington Report, p. 47-48).

In response, the District contends that the discrimination policies and training it began implementing in 1997 have been disseminated to nearly all of its officers. Despite the fact that harassment continued while these policies were in place, the District argues that the likelihood of future harassment is insignificant and does not warrant injunctive relief.

The Seventh Circuit rejected a substantially similar argument in *Bruso v. United Airlines, Inc.*, 239 F.3d 848 (7th Cir. 2001). In *Bruso*, the district court denied the plaintiff's request to permanently enjoin the defendant from retaliating against him in the future, finding no evidence that the defendant would likely engage in such conduct. *Id.* at 864. The district court found persuasive the fact that the defendant already had discrimination policies and mechanisms for addressing harassment complaints, even though such policies did little to deter the plaintiff's harassers, stating only that it was "of no moment" that "those mechanisms may not be 100% effective." *Id.* (quotations omitted).

The Seventh Circuit reversed, finding that "it is of every moment that [the defendant's] reporting polices are not 100% effective." *Bruso,* at 864. The Court explained that, because the defendant's managers felt free to ignore the company's harassment policies in the past, there was no reason to believe that the policies would prevent the defendant's managers from discriminating against the plaintiff in the future. *Id.* As such, an injunction

6

providing the plaintiff with "the legal protection to which the jury's verdict entitles him" was warranted. *Id.*

Similarly, in the case at bar, the District's mechanisms for handling harassment and discrimination in the workplace are insufficient to rebut Plaintiff's evidence demonstrating that it is likely that the Defendants' discriminatory conduct will persist in the future. Far from demonstrating that future harassment and discrimination is unlikely, the District has established that its existing policies either are not being properly implemented or are ineffective. *See Mohr v. Chicago School Reform Board of Trustees of the Board of Education of the City of Chicago,* 155 F. Supp.2d 923, 931 (N.D. Ill. 2001)(ruling that an injunction was warranted, even though the defendant already had a discrimination policy and grievance procedure, because the policy and procedure were ineffective in preventing the underlying discriminatory events.)

Notably, many of the Individual Officers are still employed by the District. More importantly, Plaintiff has presented uncontradicted evidence that, just prior to the trial, she continued to be subjected to harassment and retaliation, despite the District's training and the dissemination of its discrimination policies. In August of 2001, Plaintiff complained of pornography being placed in her desk. In addition to being harassed by her fellow officers and her commanding officer for making this complaint, the current Chief of Police told other officers that he

7

would not award Plaintiff a plumb assignment because she went over his head in lodging her complaint.

In these circumstances, the Court believes that there is more than a remote possibility that the discrimination will persist. It is apparent to the Court that the District will abandon its sexual harassment and discriminatory culture only if forced to do so. Therefore, Plaintiff's request for injunctive relief is granted.

In determining the scope of this injunction, the Court is mindful that the relief should be tailored to prevent the conduct proved at trial. The Court agrees with Plaintiff and orders that the District be permanently enjoined from causing, encouraging, condoning or permitting sexual harassment, discrimination and retaliation against female employees of the District. In addition, the District is required to provide separate locker room facilities for its female employees in all areas of the Department of Law Enforcement within one year. The District has employed female officers since the 1980s; two decades is long enough for these officers to wait for separate facilities comparable to those enjoyed by male officers.

Under the guidance of its Human Resources Department, the District is further directed to develop and issue a comprehensive sexual harassment/discrimination and retaliation policy, establishing a zero tolerance policy for violators. This policy shall be included in the District's Standard Operating Procedure Manual

8

and be prominently posted in all areas of the District. The policy shall provide for appropriate sanctions or disciplinary measures to be taken against supervisors or other employees who are found to have sexually harassed, discriminated against, and/or retaliated against female employees, up to and including termination.

The District will develop a comprehensive training program to train all District employees regarding their rights and obligations in the areas of sexual harassment, discrimination, and retaliation. The Court orders the District to establish a mechanism for ensuring and documenting that all of its personnel has received the aforementioned policies and training. These records shall be retained for no less than five years.

The District will implement a complaint and investigation procedure for all complaints of sexual harassment, discrimination, and retaliation. The District will make it clear that it will not tolerate the taking of any adverse action against any employee based on that employee's complaint of sex discrimination or harassment, or based on assistance to any other employee's complaint of sex discrimination or harassment. All complaints of sexual harassment, discrimination, and retaliation are to be brought to the attention of the Defendant's Human Relations Department and the Internal Affairs Department. Complaints brought against any employee, officer, or official shall be noted in the alleged offender's personnel file. The District is required to

produce and retain full written reports of all complaints, and the accompanying investigations, for no less than five years.

The Court denies Plaintiff's request that the District be ordered to hire independent monitors and evaluators, which Plaintiff claims are necessary to conduct surveys and studies regarding sexual attitudes and discrimination within the District, and to establish hiring and promotion goals for women in the District. The Court is not convinced that surveys and studies are required. Moreover, the evidence presented at trial in this case establishes a sensitivity and willingness on the part of the Human Relations and Internal Affairs Departments to appropriately receive and address complaints of harassment, discrimination, and retaliation, if allowed to do so, and the Court is confident that these Departments will ensure that the policies, training, and procedures contemplated by this Order will be implemented.

## Conclusion

The evidence presented at trial clearly demonstrated that Plaintiff was the victim of discrimination, harassment, and retaliation at the hands of the District. The evidence also revealed that the District has engaged in a pattern and practice of discriminating against and sexually harassing its female employees. Moreover, the Court concludes that, because Plaintiff has demonstrated that it is likely that the District's discriminatory

conduct will persist in the future, a permanent injunction is warranted.

Accordingly, IT IS HEREBY ORDERED that Defendant Forest Preserve District of Cook County be, and the same hereby is, permanently enjoined from causing, encouraging, condoning, or permitting sexual harassment, discrimination, and retaliation against its female employees, as set forth above.

IT IS FURTHER ORDERED that Defendant Forest Preserve District of Cook County shall take the affirmative actions set forth above in compliance with this Order.

Dated: July 30, 2002          E N T E R:

                              _____
                              ARLANDER KEYS
                              United States Magistrate Judge